GLORIA ZAVALA, f/k/a Gloria Soto, Appellee, v.
POWERMATIC, INC., *et al.*, Appellants.

*Opinion filed September 21, 1995.—Rehearing denied
December 4, 1995.*

John S. Huntley, Georgene M. Wilson and Eric L. Brodie, of Sweeney & Riman, Ltd., of Chicago, for appellant Powermatic, Inc.

Michael H. King and Jon K. Stromsta, of Ross & Hardies, of Chicago, for appellant Eaton Corp.

Bradley D. Steinberg, Bruce D. Goodman and Gregory P. Preves, of Steinberg, Polacek & Goodman, of Chicago, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Gloria Zavala, formerly Gloria Soto, lost two fingers of her right hand in a drill press accident at Dabar Stamping Company, in Chicago. She sued both the manufacturer of the drill press, Powermatic, Inc., and Cutler-Hammer, Inc., the manufacturer of the machine's "on/off" switch. The case was tried before a Cook County jury. The jury found neither Powermatic nor Cutler-Hammer at fault.

The appellate court vacated the jury's finding and ordered a new trial. (260 Ill. App. 3d 963.) We reverse that decision and reinstate the jury's verdict.

## BACKGROUND

Zavala had been operating a drill press equipped with a "reamer" at the time of the accident. A reamer spins at a high velocity, as does a drill bit. But a reamer, unlike a drill bit, has no cutting surface at its tip; it is completely cylindrical. The outer surface of the cylinder contains "leading" edges. As the reamer spins, it is passed around the inner circumference of a hole to finish or smooth it.

The major concern at trial, and the point the appellate court's decision ultimately involved, was the manner in which the ring and middle fingers of Zavala's hand came to be injured. There was conflicting evidence on the issue. Zavala, the sole eyewitness, did not actually see the manner of injury. She testified that she felt her fingers being cut when she lost her balance while sneezing and fell toward the machine. Other testimony supported the notion that Zavala's fingers were pulled from her hand as the cloth glove she had worn came into contact with the spinning reamer, the twisting cloth acting as a severing tourniquet to separate fingers from palm. There was testimony that the glove, with the fingers and attached tendons, was found tightly wound around the reamer.

Edward Michael Caulfield's opinion testimony was central to establishing that the fingers were pulled, not cut, from Zavala's hand. Caulfield, who held a doctorate in engineering mechanics and was personally familiar with the operation of drill presses, testified as an accident reconstruction expert. In Caulfield's opinion, the accident could have happened only because the glove Zavala wore became caught up by the reamer. Caulfield explained that a spinning reamer presented only an entanglement, not a cutting, hazard.

The appellate court focused only on Caulfield's opinion in vacating the jury's verdict. The court cited two problems with that testimony. First, the court stated that Caulfield's testimony was based upon "mere conjecture," noting a lack of "reconstruction models or experiments." (260 Ill. App. 3d at 968.) The court also stated that Caulfield should not have been allowed to testify as to the "ultimate issue" in the case: whether entanglement of Zavala's glove with the reamer caused the injury. 260 Ill. App. 3d at 968.

## DISCUSSION

Neither of the reasons cited by the appellate court is sufficient to disturb the jury's verdict.

Caulfield's testimony was not based on conjecture. Caulfield stated that he reviewed all of the deposition testimony generated for the litigation, including that of Zavala, Powermatic and Cutler-Hammer engineers, and Terrence Willis, another engineer whom Zavala had retained to testify. Caulfield also had inspected the drill press. He tested the workings of the "on/off" switch. He took timed photographs of the reamer's operation to study how many revolutions would take place after the press had been turned off. The foundation for Caulfield's testimony was, in fact, not materially different from the foundation for the testimony of Willis, Zavala's own expert.

Caulfield's testimony was not otherwise subject to attack for the reason that his opinion reached an ultimate issue in the litigation. It has been settled for some time that expert opinion testimony on an ultimate fact or issue does not impermissibly intrude on the fact finder's role. (*Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 122.) That notion applies in both civil and criminal contexts in this State so long as all other requirements for the admission of expert testimony are met. (See generally *Freeding-Skokie Roll-Off Service, Inc. v. Hamilton* (1985), 108 Ill. 2d 217, 221; *People v. Pugh* (1993), 157 Ill. 2d 1, 24.) The reason: the trier of fact is not required to accept the expert's conclusion. *Merchants National Bank*, 49 Ill. 2d at 122; see also *Hamilton*, 108 Ill. 2d at 221; see generally Note, *The Admissibility of Expert Witness Testimony: Time to Take the Final Leap?*, 42 U. Miami L. Rev. 831, 896 (1988) (noting that Federal Rule of Evidence 704, which abolishes the ultimate issue rule, is based on notions that a jury, instructed on the defer-

ence to accord, functions best under full presentation and cross-examination of expert testimony).

The rationale has done nothing to lessen unnecessary confusion about whether expert reconstruction testimony may be admitted where there is also an eyewitness, a concern here. (See M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 703.2, at 596 (6th ed. 1994).) Our appellate court has traced the problem to not entirely successful attempts to comply with statements found in *Plank v. Holman* (1970), 46 Ill. 2d 465, and *McGrath v. Rohde* (1972), 53 Ill. 2d 56. (See *Augenstein v. Pulley* (1989), 191 Ill. App. 3d 664, 676-77.) Those cases stand simply for the principle that expert reconstruction testimony is proper, even where there is an eyewitness, if what the expert offers is "knowledge and application of principles of science beyond the ken of the average juror." (*Plank*, 46 Ill. 2d at 471; see also *Miller v. Pillsbury Co.* (1965), 33 Ill. 2d 514, 516.) The principle contains no hidden subtleties. Whether to admit expert reconstruction testimony, eyewitness or not, turns on the usual concerns of whether expert opinion testimony is appropriate generally. See *Augenstein*, 191 Ill. App. 3d at 681; see *Rios v. Navistar International Transportation Corp.* (1990), 200 Ill. App. 3d 526; see also Note, *Evidence: The Role of Reconstruction Experts in Witnessed Accident Litigation*, 22 DePaul L. Rev. 7, 13 (1972).

Caulfield's testimony was appropriate in this case. Caulfield possessed expertise in "human factors engineering," a study of the relationship of man to machinery, including human motor coordination and reaction time. His opinion as to how the accident happened focused on human factors and the nature of the reamer's operation. The information imparted by Caulfield was certainly "beyond the ken of the average juror" and was proper notwithstanding Zavala's own testimony. It is

also of note that Zavala enjoyed the opportunity to present her own engineering expert, Willis. Such would provide a separate basis for allowing Caulfield's testimony. See *Kelley v. American Motors Corp.* (1985), 130 Ill. App. 3d 662, 672.

Zavala offers other reasons not addressed by the appellate court to support vacation of the jury's verdict. The first concerns the refusal to give two nonpattern jury instructions which Zavala tendered. The first of the refused instructions would have informed the jury that a manufacturer owes a nondelegable duty to make a reasonably safe product. The second would have advised that a defendant cannot avoid liability simply by undertaking the same measures as others in an industry to make a product safe.

Zavala's contention of error with regard to refusal to give the first instruction is specious. Zavala tendered, and the jury was instructed over defense objection, a substantively identical, alternative instruction regarding duty. As for the second refused instruction, it did not convey accurately the proposition stated in *Gelsumino v. E.W. Bliss Co.*, the supporting basis. See *Gelsumino v. E.W. Bliss Co.* (1973), 10 Ill. App. 3d 604, 609-10 (observing that a manufacturer's "conformity to the state of the art" is relevant, though not conclusive, as to negligence).

Zavala also complains that it was error for the trial judge to have given two nonpattern instructions tendered by the defense. The first informed that a drill press manufacturer had no duty to manufacture a different design if the design is not feasible. The second advised that custom and practice at the time of the manufacture of a drill press could be taken into account in determining negligence.

The same instructions were considered in *Rios v. Navistar International Transportation Corp.* (1990), 200

Ill. App. 3d 526, 534-35, with regard to a substantially similar argument as that advanced here. The instructions here were warranted, just as they were in *Rios v. Navistar International Transportation Corp.*, by the evidence introduced.

Zavala also complains that the trial judge ruled improperly on a motion for mistrial based upon a comment by Powermatic's counsel during closing argument. The comment concerned Federal standards for drill presses. Mention of such standards had been barred pursuant to a motion *in limine*.

The record belies Zavala's argument. There is a single reference to the standards. The reference is made in commenting on the background of Richard Flanigan, a testifying expert. Defense counsel made no comment regarding the applicability of the standards in the case.

Finally, we reject Zavala's argument that her cross-examination and the testimony of others regarding glove use constituted reversible error. Zavala insists that the "manifest weight of the evidence" showed that the glove she wore did not become caught up by the reamer. Zavala's argument that no basis existed in the record upon which to ground the cross-examination and the admission of the other evidence fails against a review of the record. Contrary to Zavala's argument, the issue of whether entanglement of the glove caused the injury was grounded in both Caulfield's opinion testimony and testimony of post-occurrence witnesses.

For the reasons stated, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*