Fourth Division

February 19, 1998

Nos. 1-97-0042, 1-97-0043, Cons.

RICHARD MORRISON, ) APPEAL FROM THE 

) CIRCUIT COURT OF

Plaintiff-Appellant, ) COOK COUNTY.

)

and )

)

BILLY JOE PAYNE, )

)

Plaintiff, ) 

)

v. )

)

MICHAEL D. RECKAMP, )

)

Defendant-Appellee, )

)

-----------------------------------------------------------------SAFETY-KLEEN CORPORATION, ) 

)

Plaintiff-Appellant, )

) 

)

v. )

)

MICHAEL D. RECKAMP, ) HONORABLE

) WALTER J. KOWALSKI,

     Defendant-Appellee. ) JUDGE PRESIDING.

JUSTICE WOLFSON delivered the opinion of the court:

The morning of January 9, 1990, was gray, overcast, and rainy as Richard Morrison drove a tractor-trailer owned by the Safety-Kleen Corporation west along Route 20 in Elgin.  Morrison's partner, Billy Joe Payne, was riding in the passenger seat of the tractor cab.  As the tractor-trailer neared the intersection at Shales Parkway, it left the roadway, traveled along the shoulder, then flipped on its side, snapping a telephone pole in two, breaking some electrical wires, and coming to rest against a telephone pole.

Morrison was unconscious at the scene of the accident and was taken to the hospital.  When he regained consciousness in the hospital he had no recollection of the accident.  He could not say how the accident occurred or what had caused the tractor-trailer to leave the roadway.

Billy Joe Payne was unable to provide the missing pieces to the puzzle of what went wrong.  Payne said he had been looking out the passenger window when he felt the right front tire travel onto the shoulder.  He looked over at Morrison and saw that he was awake.  However, the tractor-trailer, Payne said, continued along the shoulder for about 150 to 200 feet, then hit "sort of a ditch."  The trailer rolled onto its side, hit a telephone pole, and broke the pole in two.  The tractor-trailer then came to rest against a second telephone pole.

Though Payne thought the tractor-trailer left the pavement "suddenly," he could not say what caused Morrison to veer off the road.  Morrison did not sound his horn or say anything before the accident.  Payne did not see a car pull into their lane in front of them.

Marilyn Binda also was driving along Route 20 on the morning of January 9, 1990.  She was familiar with Route 20, which has two lanes going east and two lanes going west, because she traveled it every day on the way to work.  Binda was in the left lane going west.  She saw a Safety-Kleen tractor-trailer, also going west, in the right-hand lane about 30 feet ahead of her.  There were three cars in the left lane ahead of her.

Binda said she saw a white Nissan, which was traveling two cars ahead of her in the left lane, move sharply into the right lane in front of the tractor-trailer, without signaling.  Soon after, the tractor-trailer began to "ease over" to the right and its right tires moved onto the shoulder.  After continuing along the shoulder for a distance, the tractor-trailer seemed to "lunge forward."  It then fish-tailed, left the road, and flew into the air.  It finally came to rest with a deafening thud.

Binda believed that the white Nissan had caused a chain reaction which resulted in the accident.  She followed the Nissan and wrote down its license plate number.  Later, she called the Elgin police department and reported what she had seen, including the license number of the white Nissan.

Binda wasn't the only witness to the accident, however.  Donna K. Britton was traveling eastbound on Route 20 when she saw a tractor-trailer traveling in the westbound lane leave the road.  Britton said it was raining heavily at the time of the accident.  She didn't see any cars in front of the tractor-trailer, nor did she see a car move into the right lane in front of the tractor-trailer.  The tractor-trailer seemed to just "roll off" the roadway onto the shoulder "in slow motion."  For no apparent reason, she said, the tractor-trailer began to veer off the road, then "bounced," and flipped over.

Scott Boyd Norris also was traveling eastbound on Route 20 at the time the accident occurred.  He first noticed the tractor-trailer when he was 3,000 to 4,000 yards away.  Though traffic was fairly heavy in both directions, he never saw a car cut in front of the tractor-trailer.  However, he did see a car that was traveling eastbound in front of him make a quick left-hand turn from Route 20 into the Consolidated Freightways yard.  This car would have crossed in front of the tractor-trailer.  Shortly after, the tractor-trailer left the road "really quickly" and went into a ditch.  He believed the car that made the left-hand turn in front of the tractor caused a chain reaction which resulted in the tractor-trailer leaving the road.

Two Elgin police officers, Deputy Chief James J. Burns and Officer Thomas Shergold, went to the scene of the accident to investigate.  Officer Shergold was primarily responsible for traffic control.  However, his partner, Deputy Chief Burns, the senior officer in charge of the investigation, was a certified accident reconstruction specialist.  It was Burns' responsibility to determine the cause of the accident.

Burns took photographs, made measurements, and collected other physical evidence.  Based on his observations at the scene, he concluded that the tractor-trailer had been traveling in a straight line when, for unknown reasons, it left the roadway in a gradual or smooth motion, traveled along the shoulder for approximately 100 feet, then went into a ditch.  Because the tire imprints indicated that the tires were "rolling" when they were on the shoulder and there was no evidence of skidding or "yaws" (sideways sliding), it was his opinion the tractor-trailer had not been braking when it left the road, nor did it appear that the tractor was involved in an evasive maneuver when it left the roadway.

Based on the license plate information received from Marilyn Binda, Officer Shergold identified Michael Reckamp as the owner of the white Nissan.  Shergold and Deputy Chief Burns interviewed Reckamp at his place of employment the day of the accident.  Reckamp, Shergold said, was completely unaware that an accident occurred on Route 20 involving a Safety-Kleen tractor-trailer.  Reckamp admitted he had been driving along Route 20 that morning, but he didn't remember seeing the tractor-trailer.  Reckamp said after he passed the Consolidated Freightways yard and was proceeding over the second of two bridges that were located west of the freight yard on Route 20, he heard a "boom" and saw a flash of light.  Reckamp attributed this to the weather and proceeded on his way.  Reckamp denied pulling into the right-hand lane in front of the tractor-trailer.

The police filed no charges against Reckamp.

On December 31, 1991, Morrison and Payne filed a personal injury suit against Reckamp, claiming Reckamp's negligence caused their tractor-trailer to leave the roadway and resulted in their bodily injury.  Two-and-a-half years later, the Safety-Kleen Corporation filed a complaint against Reckamp, seeking to recover for property damage to the tractor-trailer.  The two actions were consolidated.

A jury trial on the consolidated complaints began on September 18, 1996.  On September 24, 1996, the jury returned a verdict in Reckamp's favor and the court entered judgment on the verdict.  The plaintiffs filed post-trial motions, which were denied.

Morrison and Safety-Kleen filed separate notices of appeal.   These appeals have been consolidated for our review.  Morrison and Safety-Kleen, in a joint brief, raise as issues: (1) whether the trial court erred by permitting Deputy Chief Burns to testify as an accident reconstruction expert; (2) whether the trial court erred when it refused to instruct the jury to consider defendant's alleged violation of section 11-703(a) of the Vehicle Code (Overtaking a vehicle on the left) when determining negligence; and (3) whether the trial court erred when it barred Morrison's hospital discharge summary from being entered into evidence.  We affirm.

DECISION

1. 
Expert Reconstruction Testimony

Plaintiffs contend the trial court erred when it admitted Deputy Chief Burns' expert reconstruction testimony.  Plaintiffs claim expert testimony was unnecessary because eyewitnesses testified regarding the manner in which the tractor-trailer left the road and because the observation of tire markings does not require the application of scientific principles unknown to the common lay person.  Deputy Chief Burns, say plaintiffs, merely gave his interpretation of tire imprints to conclude that the tractor was rolling straight ahead and did not skid, which "any lay person ... even school children" would have been capable of discerning from the photographs that were submitted.

Reckamp contends this issue is waived because no contemporaneous objection was made by Safety-Kleen's counsel and, though objections were made by Morrison's counsel, the basis for objection given at trial differs from the basis proffered on appeal.  We do not agree that waiver applies.

As stated in 
Gausselin v. Commonwealth Edison Co.
, 260 Ill. App. 3d 1068, 1079, 631 N.E.2d 1246 (1994), "The law is well-settled, that to preserve an issue for appellate review, a party must make 
the appropriate objections in the trial court or the issue will be deemed waived."  In this case the trial court ruled on Morrison's motion 
in
 
limine
 to bar Burns' opinion testimony, stating:

"Look, my ruling is I'm permitting him to testify to an opinion being gradually going off the road predicated on tire marks and so forth."

At trial, Morrison's counsel interjected five objections to Burns' testimony.  Though four of the objections did not preserve the issue (one objection was for "leading," two objections were made because counsel believed the question had been "asked and answered," and one "hearsay" objection was sustained), the following colloquy shows that counsel sufficiently preserved the issue when he renewed his motion 
in
 
limine
:

"Q. (Defense counsel:) Is it your opinion, based upon those photographs and what you observed at the scene of the accident, that the tires were rolling ahead?

A. Yes sir.  Straight ahead, sufficiently to cause them to leave a clean pattern.  There could be some deviation, but very minor.

Q. Let's get into another opinion, Deputy Chief.  I believe there are two possible scenarios that could have happened in this particular accident?

MR. HAYNES: Objection, your Honor, speculation.  I would also renew my prior motion.

THE COURT: You may answer.  Be notified on the prior motion I overruled it, Counsel.  Go ahead."

By renewing his motion, counsel sufficiently preserved the issue of whether reconstruction testimony should have been admitted.

Though the issue is not waived, we reject it on its merits.  The trial court did not abuse its discretion in admitting Burns' testimony.

Whether or not eyewitness testimony is available, expert reconstruction testimony may be admitted if it provides "knowledge and application of principles of science beyond the ken of the average juror."  
Zavala v. Powermatic, Inc.
, 167 Ill. 2d 542, 546, 658 N.E.2d 371 (1995), quoting 
Plank v. Homan
, 46 Ill. 2d 465, 471, 264 N.E.2d 12 (1970).  As with any type of expert testimony, reconstruction testimony will be admissible if the expert is qualified to render an opinion and the testimony will aid the fact-finder in the resolution of the dispute.  See 
Zavala
, 167 Ill. 2d at 546; 
Rios v. Navistar International Transportation Corp.
, 200 Ill. App. 3d 526, 558 N.E.2d 252 (1990).

In this case, Deputy Chief Burns testified that he completed coursework at the Northwestern Traffic Institute and passed a test to become certified as a reconstruction specialist.  Burns said his specialized training allowed him to interpret tire imprints and markings to determine whether a vehicle was skidding or sliding at the time the imprint was made.

Plaintiffs do not question Burns' qualifications, but claim his testimony was "unnecessary" because eyewitnesses testified about their observations of the tractor-trailer as it left the road.  A review of the record, however, shows the witnesses gave conflicting testimony.  Morrison, who was driving the tractor-trailer, had no memory of the accident.  He couldn't say if he tried to take evasive action or applied the brakes.  Billy Joe Payne, the passenger in the tractor-trailer, said he felt the right tire move onto the shoulder and continue for 150 to 200 feet before going into a ditch.  Donna Britton said the tractor-trailer didn't skid but "just kind of rolled right on off in slow motion."

Marilyn Binda, however, said she saw the tractor-trailer "fishtail" as it left the roadway.  Scott Norris said the tractor-trailer left the road "really quickly."

Under the circumstances, we cannot say the trial court abused its discretion by allowing Burns' reconstruction testimony.  Burns' interpretation of the tire imprints and markings he observed at the scene was helpful in aiding the triers of fact to resolve questions regarding the manner in which the tractor-trailer left the road.

We disagree with plaintiffs' claim that an ordinary juror would have the ability to interpret tire markings as proficiently as a trained expert.  

In 
Watkins v. Schmitt
, 172 Ill. 2d 193, 206, 665 N.E.2d 1379 (1996), relied on by plaintiffs, the court disallowed expert testimony about speed because "any lay person with a reasonable opportunity to observe and ordinary experience with moving vehicles can estimate the speed of a car."

The trial court must center its attention on the need for the testimony.  The Supreme Court said in 
Watkins
 "the existence of eyewitness testimony is not the conclusive factor in determining whether accident reconstruction testimony is admissible."  
Watkins v. Schmitt
, 172 Ill. 2d at 206.  Instead, the test is whether, in addition to eyewitness testimony, "expert reconstruction testimony would be needed to explain scientific principles to a jury and enable it to make factual determinations."  
Watkins v. Schmitt
, 172 Ill. 2d at 206.

We have seen the photographs of the accident scene depicting the tire marks left by the tractor-trailer along the roadside.  The markings are difficult to discern.  Simply looking at the photographs would not have provided jurors with the degree of guidance offered by Burns.  Did the truck roll off the road?  Or did it veer sharply?  Did it brake?  These are questions lay jurors could not answer sensibly simply by looking at the photos.  They needed help and they received it.  Burns did not testify to speed.  
Watkins
 does not reject Burns' testimony. 

We conclude, aside from any waiver, the trial court's admission of the Burns' reconstruction opinion testimony was not an abuse of discretion.

2. 
Jury Instruction

Plaintiffs contend it was error for the trial court to refuse to give their Instruction No. 19.  Plaintiffs' Instruction No. 19 would have told the jury that, when considering whether Reckamp was negligent, the jury should consider whether Reckamp violated section 11-703(a) of the Vehicle Code, which describes the proper method of overtaking and passing a vehicle from the left.

The trial court disallowed the instruction because it found this section of the Code inapplicable, pertaining only to the proper method of passing on a two-lane highway.  Plaintiffs argue, however, that when the court refused this instruction, they were denied the ability to have the jury properly instructed on their theory of the case.  Again, we disagree.

Though a trial judge must instruct the jury on all issues reasonably presented by the evidence, and each party is entitled to have the jury clearly and fairly instructed upon each theory supported by evidence, a reviewing court should not disturb the trial court's determination of instructions unless the trial court clearly abused its discretion.  
Seitz v. Vogler
, 289 Ill. App. 3d 1029, 1044, 682 N.E.2d 766 (1997).  The test used in determining the propriety of tendered instructions is whether the jury was fairly, fully, and comprehensively informed about relevant principles, considering the instructions in their entirety.  
Leonardi v. Loyola University
, 168 Ill. 2d 83, 100, 658 N.E.2d 450 (1995).

Considering the instructions given in this case in their entirety, we find the plaintiffs were not denied the ability to present their theory of the case by the trial court's refusal to give plaintiffs' Instruction No. 19.  The trial court accepted and gave plaintiffs' Instruction No. 20, which adequately instructed the jury on plaintiffs' theory.  Instruction No. 20 told the jury to consider whether Reckamp violated section 11-804 of the Vehicle Code when deciding whether Reckamp was negligent.  Section 11-804 of the Vehicle Code says, "No person may turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.  No person may so turn any vehicle without giving an appropriate signal."

Plaintiffs' Instruction No. 20 adequately instructed the jury on plaintiffs' theory -- that Reckamp caused the tractor-trailer to move onto the shoulder of the road when, without signaling, Reckamp cut in front of the tractor-trailer without giving it sufficient space.  Instruction No. 19, if given, would have been redundant.  For this reason, we do not believe the trial court abused its discretion when it chose to use plaintiffs' Instruction No. 20 and not Instruction No. 19.

3. 
Admission of Evidence

Finally, plaintiffs contend the trial court erred when it excluded from evidence plaintiffs' exhibit No. 11, a discharge summary prepared by the hospital on Morrison's release.  This document stated Morrison was admitted to the hospital after a truck accident and that Morrison "had amnesia for the event."  According to the document, Morrison's physical condition improved, but his memory did not and Morrison still had amnesia at the time of discharge.

Plaintiffs say the exclusion of this document prevented them from presenting "objective, independent evidence to support Morrison's claim of amnesia."  However, whether Morrison had  amnesia and could not at the time of the trial remember the events leading up to the accident was never seriously contested.  The defense never challenged Morrison's claim of current amnesia during his cross-examination or in final argument.  Morrison's amnesia was not a material issue or relevant to the resolution of the case.

Admission of evidence is a decision left to the discretion of the trial court, and will not be overturned absent a clear showing of an abuse of that discretion.  
Jackson v. Pellerano
, 276 Ill. App. 3d 454, 658 N.E.2d 1184 (1991).  The party seeking reversal due to the exclusion of evidence has the burden of showing prejudice stemming from the court's decision.   
Israel v. National Canada Corp.
, 276 Ill. App. 3d 454, 658 N.E.2d 1184 (1995).

In the present case, even if the trial court erred by refusing to admit the medical record, plaintiffs have not established how they were prejudiced by this error.  The exclusion of the exhibit, therefore, whether or not error, does not warrant a new trial.

CONCLUSION

For all the reasons stated above, we affirm the verdict in favor of Reckamp and the judgment entered by the circuit court.

AFFIRMED.

McNAMARA and SOUTH, JJ., concur.