NOTICE
Decision filed 01/23/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 180583-U

NO. 5-18-0583

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| LAURA CARPENTER, Individually and as Special Administrator of the Estate of Matthew Lindsey, Deceased, | ) ) ) | Appeal from the Circuit Court of Marion County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 17-L-9 |
| | ) | |
| MARLA C. MEYER, | ) ) | Honorable Michael D. McHaney, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court erred in granting summary judgment in favor of defendant where there were genuine issues of material fact regarding defendant's negligence.

¶ 2   Plaintiff, Laura Carpenter, individually and as special administrator of the estate of Matthew Lindsey, deceased, brought wrongful death and survival actions against defendant, Marla C. Meyer, alleging that plaintiff's eight-year-old son, Matthew Lindsey, sustained serious and ultimately fatal injuries as a result of defendant's failure to keep a proper lookout and drive her vehicle with reasonable care for the safety of pedestrians on

1

the roadway. Defendant filed a motion for summary judgment, arguing that plaintiff did not produce any evidence to demonstrate a breach of defendant's duty of care or that any such breach was a proximate cause of plaintiff's damages. The circuit court granted defendant's motion, and plaintiff appealed. On appeal, plaintiff asserts that defendant was not entitled to judgment as a matter of law because she presented some evidence demonstrating the existence of genuine issues of material fact as to defendant's negligence. For the reasons that follow, we reverse and remand.

¶ 3    On Tuesday, October 25, 2016, at approximately 7:23 p.m., defendant was driving eastbound on U.S. Route 50, near Kasznel Road, when her vehicle struck Matthew Lindsey, an eight-year-old pedestrian. As a result of the impact, Matthew was thrown into a ditch on the south side of U.S. Route 50. He came to rest near a culvert, southeast of the area of impact. Matthew sustained severe injuries. He was treated at the scene, and then transported to Salem Memorial Hospital where he was pronounced dead upon arrival. Defendant was not physically injured in the collision. She was taken to Clay County Hospital with complaints of shortness of breath and chest tightness.

¶ 4    Illinois State Trooper Justin Hildebrand responded to the crash scene and prepared an Illinois Traffic Crash Report (Crash Report). Hildebrand requested assistance with the crash scene reconstruction. Trooper David Jourdan responded and prepared a "Level 3 Traffic Crash Reconstruction Report" (Reconstruction Report). The Crash Report was incorporated as part of the Reconstruction Report. Trooper Hildebrand's Crash Report indicated that the vehicle-pedestrian collision occurred on U.S. Route 50, a two-lane, non-divided road, without streetlights. On page one of the Crash Report, Trooper Hildebrand

2

indicated that the collision occurred at 7:26 p.m., and was reported at 7:30 p.m. In the narrative section on page two of the report, Trooper Hildebrand stated that the collision occurred at approximately 7:23 p.m. Trooper Hildebrand reported that it was dark, and the weather was clear. The road was dry, straight, and level, and there was nothing that would have obscured the motorist's vision. There were no defects in the roadway, and no construction. Trooper Hildebrand noted that defendant's vehicle was moving straight ahead at the time of the collision. He also indicated that Matthew was wearing contrasting clothing, and that Matthew was standing in the roadway.

¶ 5    According to the Reconstruction Report, Trooper Jourdan arrived at approximately 9:26 p.m. By the time of his arrival, Matthew had already been taken from the scene. Trooper Hildebrand showed Trooper Jourdan where Matthew had been found. Trooper Jourdan noted a small area of blood in that location. Trooper Hildebrand advised Trooper Jourdan that Matthew had died from his injuries. Trooper Hildebrand also advised that he spoke with defendant about the crash. During that conversation, defendant stated that she was traveling east on U.S. Route 50 near Kasznel Road when Matthew entered the eastbound lane of traffic. Defendant's vehicle then struck Matthew, causing him to land in the ditch. Trooper Hildebrand noted that Matthew was wearing a light gray shirt at the time of the crash.

¶ 6    Trooper Jourdan then investigated the crash scene. In the narrative section of the Reconstruction Report, Trooper Jourdan indicated that defendant's vehicle had stopped approximately 390 feet *west* of the location where Matthew was discovered. Based on his diagram, however, defendant's vehicle was stopped *east* of the point where Matthew came

3

to rest in the ditch. Trooper Jourdan reported that defendant's vehicle had damage to the right front headlight, right bumper, and hood. The diagram indicated that plastic from the vehicle's broken headlight was found scattered along the fog line and south shoulder of the highway, that Matthew was found in a ditch off the roadway, southeast of the debris field, and that a toy car was located west of the debris field, on the south shoulder of U.S. Route 50, near the intersection with Kasznel Road. Although not discussed in the narrative section of the Reconstruction Report, it appears, based upon the scale in the diagram, that Matthew was thrown approximately 65 feet from the debris field, and that defendant brought her vehicle to a stop approximately 450 feet east of the debris field. Trooper Jourdan indicated that shoes were found at the area of impact, and that the shoes were moved and placed on the side of the road. The report does not indicate who found the shoes, who moved them, or why they were moved. Photographs were taken of the roadway and the vehicle. The original photos were not provided in the record. Instead, thumbnail JPEG images were scanned and attached to the Reconstruction Report. For the most part, the scanned thumbnail images are indecipherable.

¶ 7    Trooper Jourdan noted that Trooper Brad Brachear also interviewed defendant about the crash. Trooper Brachear provided a summary of defendant's account of the incident. According to the summary, defendant indicated that she was returning home after dropping her husband off at a field to pick up his tool truck. She was driving eastbound and had passed Woodlawn Church. She recalled that the lights were on in the church and she wondered why they had a service on a Tuesday night.

"Mrs. Meyer stated she was listening to a gospel tape and driving 60 miles per hour, with her cruise control possibly set. Mrs. Meyer stated she felt contact and heard something hit her car. Mrs. Meyer stated she saw a person with a light t-shirt and light hair in the air in front of her car with their hands up. Mrs. Meyer stated she did not hit the brakes immediately. Mrs. Meyer stated she didn't know why, maybe shock at what just happened, and took time to process. Mrs. Meyer stated there were no other cars around. Mrs. Meyer thought she saw him off to her left when he was in the air. As soon as she stopped, Mrs. Meyer called her daughter. The time she called her daughter was 7:21 p.m."

¶ 8 On March 6, 2017, plaintiff filed a two-count complaint against defendant under the Illinois Wrongful Death Act (740 ILCS 180/1 *et seq.* (West 2016)) and the Illinois Survival Statute (755 ILCS 5/27-6 (West 2016)). Plaintiff alleged that defendant committed one or more of the following negligent acts or omissions:

"a. failed to keep her motor vehicle under proper control on the roadway;

b. failed to exercise reasonable care for the safety of pedestrians on the roadway in violation of Section 11-1003.1 of the Illinois Vehicle Code;

c. failed to give a warning by sounding a horn for the safety of pedestrians on the roadway in violation of Section 11-1003.1 of the Illinois Vehicle Code;

d. failed to take proper precaution upon observing a child on the roadway in violation of Section 11-1003.1 of the Illinois Vehicle Code;

e. failed to keep a proper lookout for persons and property on the roadway; and

f. failed to decrease the speed of her motor vehicle as necessary to avoid colliding with another person on the highway in violation of Section 11-601 of the Illinois Vehicle Code."

Plaintiff further alleged that Matthew suffered severe and ultimately fatal injuries as a result of defendant's negligence. Plaintiff sought damages for the loss of society and companionship suffered by decedent's next of kin under the Wrongful Death Act, as well

as damages for the personal injuries, including pain and suffering, and the medical expenses incurred by Matthew prior to his death under the Survival Act.

¶ 9     On May 2, 2017, defendant filed an answer, denying all allegations of negligence. Defendant also filed affirmative defenses, alleging that plaintiff was negligent in that she allowed Matthew to be on the roadway after dark, failed to provide reflective clothing for Matthew, and failed to adequately supervise Matthew. Defendant asserted that plaintiff's negligent actions should bar any recovery, or in the alternative, that any judgment should be reduced by the percentage of contributory negligence attributable to plaintiff. On May 23, 2017, plaintiff filed a reply, denying all of defendant's affirmative defenses.

¶ 10    On April 11, 2018, defendant filed a motion for summary judgment and a supporting memorandum. Defendant claimed there was no evidence that any negligence by defendant caused the collision, and that absent any evidence of negligence, defendant was entitled to judgment as a matter of law. Defendant asserted that she was driving her vehicle eastbound on U.S. Route 50, traveling between 55 and 60 miles per hour, that it was dark, and the headlights on her vehicle were fully functional. Defendant further asserted that Matthew entered the roadway on eastbound U.S. Route 50 at approximately 7:23 p.m., and she had no prior indication that the child was near the roadway prior to the impact. Defendant further asserted that Matthew's parents testified that they were not aware of any negligent acts by defendant. Defendant argued that any suggestion that she may have been negligent was based on pure speculation and that she was entitled to summary judgment.

¶ 11    Defendant attached the transcript of her discovery deposition in support of her motion for summary judgment. Therein, defendant testified that she was traveling on U.S.

6

Route 50 eastbound after dropping her husband off at the field to prepare for harvest. She stated that she was travelling between 55 and 60 miles per hour, singing along with a compact disc of gospel music. She stated that she was not texting, talking on the phone, or adjusting the radio. Defendant testified that the posted speed limit was 55 miles per hour. There were no streetlights along the highway. It was dark, but there was no precipitation. Defendant stated that her headlights were on. The headlights were automatic, so she could not say whether the headlights were on the regular setting or high beam. Defendant testified that she was wearing her glasses and her eyes were trained on the road. Defendant stated that her first indication that a child was near the roadway was when she heard and felt an impact with the right front quarter panel of her vehicle, and she wondered what she had hit. Defendant testified that in the moment after impact, she "saw the image of a boy with light-colored hair, a white shirt. It looked like he was in a wind tunnel. He was blowing, and he was gone like that. And then I hit the brakes." After seeing this "vision," she "processed a moment" and then hit the brakes. Defendant stated that this "vision" was provided by God, that the boy had to have already been dead, and that his spirit was going to heaven. She stated that this was the only reason she could live with this. Defendant stated she saw that the image was on the driver's side of her vehicle, and the boy was facing south. She acknowledged the damage was on the passenger side of her vehicle.

¶ 12    Defendant further testified that she talked with an Illinois State police officer after the accident. When asked whether she recalled telling the officer that she had been listening to a gospel tape and driving 60 miles per hour, with her cruise control possibly set just prior to the collision, she indicated that she did not remember making that statement. When

7

asked if she disputed this information, she testified that she agreed that she was listening to a gospel tape, that she rarely used her cruise control, and that her driving speed would have been a guess. When defendant was asked about her interview with Trooper Brachear, where she stated that "she saw a person with a light t-shirt and light hair in the air in front of her car with their hands up," defendant testified that this was the "vision" she had previously described.

¶ 13    Defendant also testified that when she came to a stop, she put on her emergency flashers. At that point, she tried to use OnStar to call 911, but the OnStar was not working. Defendant picked up her cell phone and called her daughter. Defendant could not recall if she tried to call 911. Defendant told the police officer she called her daughter at 7:21 p.m., but defendant did not know if she checked her call log to provide the time of the call. Defendant testified that she did not go back to check on the boy's condition. She honked her horn and tried to get passing motorists to stop. A man named Darrel Sullens stopped. Darrel put his arm around her and called 911. Defendant identified herself and told the dispatcher that "she hit a boy, and no one would stop to help."

¶ 14    Defendant recalled that the Illinois State Police and Marion County Emergency Medical Services responded to the scene. Defendant was taken to the hospital because she was having trouble breathing and her chest was tight. Defendant stated that some of her recollection of what happened was a blur because of her emotional state. At the time of the accident, defendant was taking medications, including Prozac, a water pill, and an antibiotic. She testified that she experienced depression and anxiety following the accident.

8

Defendant testified she did not see the boy and did not think there was anything she could have done differently that night.

¶ 15 The deposition transcripts of Matthew's parents were attached in support of defendant's motion for summary judgment. Plaintiff testified that she and her family lived in a trailer on U.S. Route 50, near the intersection with Kasznel Road. Plaintiff noted that Matthew had been diagnosed with autism just before his second birthday. On October 25, 2016, plaintiff and her children arrived home at 7 p.m. Plaintiff started dinner and laundry. She recalled that Matthew had jumped up on the windowsill and picked up her phone to play games. The phone, however, was not charged, so Matthew went back to his room. Plaintiff first learned that Matthew was involved in an accident when a sheriff's deputy came to the house and asked if plaintiff's children were at home. She checked on Matthew and learned that he was not in the house. Plaintiff testified that she was not aware of any facts indicating that defendant either would, or would not, have been able to avoid the accident. Decedent's father, Shawn Lindsey, offered a similar account during his deposition. Neither parent witnessed any part of the incident.

¶ 16 On June 4, 2018, plaintiff filed a response in opposition to defendant's motion for summary judgment. Plaintiff argued that defendant's deposition testimony created genuine issues of material fact regarding defendant's negligence and whether she could have taken steps to avoid the accident. Plaintiff challenged defendant's claims that she did not see Matthew prior to impact and that she learned that she struck a child only upon seeing the vision of a boy with light-colored hair and a light-colored shirt. Plaintiff questioned defendant's credibility and the accuracy of her account, noting that defendant accurately

9

described Matthew's clothing and his hair color in this "vision." Plaintiff further noted that defendant did not immediately apply her brakes after impact, and that even after stopping the vehicle, defendant did not attempt to assist Matthew. Plaintiff pointed out that defendant had testified that more than 10 minutes may have passed before anyone checked on Matthew's condition. Plaintiff argued that the outcome of this incident may have been different had defendant attended to Matthew or called 911 immediately after the accident. Plaintiff further argued that her expert raised a genuine issue of material fact as to defendant's negligence and proximate cause. In further support of her response, plaintiff attached the affidavit of her accident reconstruction expert, Michael Cowsert, the State Police Reconstruction Report, along with the Illinois Traffic Crash Report, and defendant's deposition.

¶ 17    In his affidavit, Michael Cowsert stated that he reviewed the Reconstruction Report, the Illinois Traffic Crash Report, the photographs taken by the Illinois State Police, the transcript of defendant's deposition, and the medical records from Marion County EMS and Salem Hospital detailing Matthew's injuries. Based upon his review of the documents and his education, training, and experience, Cowsert made a number of observations. He noted that the roadway in the area of the collision was flat and straight, that low beam headlights on defendant's vehicle would illuminate the roadway approximately 200 to 250 feet in front of the vehicle, and that the high beams would illuminate the roadway approximately 250 to 300 feet in front of the vehicle. Cowsert further noted that the average perception to reaction time of a motorist approaching an unexpected hazard in dark conditions was approximately 1.7 to 2.2 seconds. Given defendant's statement that she was

traveling at 60 miles per hour, or approximately 88.3 feet per second at the time of the collision, Cowsert calculated defendant's perception to reaction time between 150 to 194.3 feet. Cowsert noted that Matthew's injuries were primarily concentrated on the right side of his body. Based on this information, Cowsert opined that it was more likely than not that Matthew was not crossing the road from right to left, but rather that Matthew was either walking forward on the right side of the roadway, crossing the road from left to right, or turned facing away from the road prior to impact, and therefore Matthew would have been in the roadway for a longer period of time. Cowsert noted Matthew would have been more visible due to his light-colored clothing. Given that the point of contact was very close to the right side of the front of the vehicle, defendant would have only had to make a simple evasive maneuver to avoid impact with Matthew. Based upon defendant's testimony and the objective facts noted, Cowsert further opined that defendant would have had sufficient time to see Matthew and to take evasive action to avoid hitting him, and that defendant's failure to take evasive action was a proximate cause of the collision with Matthew.

¶ 18    Defendant filed a reply, restating her arguments in support of summary judgment. Defendant further argued that plaintiff attempted to utilize her expert to "create new facts," and that the expert's opinions were based on speculation and did not deal with the facts regarding defendant's operation of the motor vehicle. Defendant claimed that her failure to stop immediately after the accident was not a sign that there was negligence on her part. Without offering any supporting foundation, defendant relied upon and referred to an article on the website of the National Highway Traffic Safety Administration, arguing that under ideal conditions, it would take a motorist nearly 350 feet to realize something had

11

happened and come to a complete stop, and that while facing less than ideal conditions, defendant came to a stop within 390 feet after impact. Defendant argued that her testimony led to one conclusion, namely that the boy darted from the side of the road into the right front side of her vehicle, and that there was no credible evidence that she was negligent.

¶ 19    Defendant's summary judgment motion was called for hearing on November 26, 2018. After considering the arguments of counsel, the trial court granted defendant's motion for summary judgment. In ruling from the bench, the court found that plaintiff's expert merely "did math," and that the expert's opinions were based on speculation. The court concluded that plaintiff's expert did not offer knowledge or apply principles of science beyond the ken of the average juror. In a typed order entered by the court on November 27, 2018, the court granted summary judgment, finding "for the reasons stated on the record, there is no genuine issue of material fact which supports the allegations of negligence presented in Count I and Count II."

¶ 20    On appeal, plaintiff claims the trial court erred in granting summary judgment in favor of defendant where the record demonstrated that genuine issues of material fact existed as to defendant's negligence. Plaintiff argues that it was error to grant summary judgment where the credibility and reliability of defendant, the sole surviving eyewitness, were in issue, and where the opinions of plaintiff's expert demonstrate a genuine issue of material fact as to defendant's negligence.

¶ 21    The purpose of summary judgment is not to try a question of fact, but to determine whether a genuine issue of material fact exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Accordingly, a court cannot make credibility determinations or

weigh evidence in deciding a summary judgment motion. *Merca v. Rhodes*, 2011 IL App (1st) 102234, ¶ 46. Summary judgment is appropriate only when the pleadings, depositions, admissions, and affidavits demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016). In determining whether a genuine issue of material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Adams*, 211 Ill. 2d at 43. A triable issue exists where material facts are in dispute, or where reasonable persons might draw different inferences from the undisputed material facts. *Adams*, 211 Ill. 2d at 43. An order granting summary judgment is reviewed *de novo*. *Adams*, 211 Ill. 2d at 43.

¶ 22    In order to succeed in an action based on negligence, a plaintiff must show that the defendant owed a duty of care to plaintiff, that the defendant breached that duty, and that the breach proximately caused plaintiff's injury or death. *Adams*, 211 Ill. 2d at 43. The existence of a duty is a question of law for the court to decide, while the breach of duty and proximate cause present questions of fact to be decided by a jury. *Adams*, 211 Ill. 2d at 43.

¶ 23    Illinois recognizes the common law duties of every driver of a vehicle using a public highway to exercise reasonable care in the operation of his vehicle, and to keep a proper lookout and to avoid a collision. See generally, *Wallace v. Weinrich*, 87 Ill. App. 3d 868, 873-74 (1980); *Zeller v. Durham*, 33 Ill. App. 2d 273, 279 (1962) (motorists in Illinois are charged with notice that pedestrians may cross the street over which he is driving and therefore have a duty to have his vehicle under control and to keep a proper lookout ahead so as to avoid colliding with pedestrians). Further, a motorist in Illinois has statutory duties

to exercise due care to avoid injuring pedestrians (625 ILCS 5/11-1003.1 (West 2016)), and to drive at a speed safe for conditions (625 ILCS 5/11-601(a) (West 2016)). In this case, the parties have no dispute as to the existence of the duties owed by motorists, including defendant, to pedestrians. Here, the issues in dispute are whether defendant breached one or more of those duties and whether defendant's breach was a proximate cause of plaintiff's injuries and death.

¶ 24    Before considering whether the trial court erred in finding that plaintiff failed to present any evidence of defendant's negligence, we will consider plaintiff's claim that the trial court erred in excluding the opinions of her reconstruction expert as it considered defendant's motion for summary judgment. Generally, the opinion testimony of an expert is admissible if the expert is qualified by knowledge, skill, experience, training, or education, and the testimony would assist the jury in understanding the evidence. *Zavala v. Powermatic, Inc.*, 167 Ill. 2d 542, 546 (1995); *Augenstein v. Pulley*, 191 Ill. App. 3d 664, 681 (1989). As with any type of expert testimony, reconstruction testimony is proper, even where there is an eyewitness, if what the expert offers is knowledge and the application of principles of science, including physics and engineering, beyond the ken of the average juror. *Zavala*, 167 Ill. 2d at 546. Whether to admit expert reconstruction testimony depends upon the "usual concerns of whether expert opinion testimony is appropriate generally." *Zavala*, 167 Ill. 2d at 546. Thus, the admissibility of reconstruction evidence is determined by whether the expert is qualified in the field and whether the testimony will aid the factfinder in the resolution of the dispute. *Zavala*, 167 Ill. 2d at 546; *Augenstein*, 191 Ill. App. 3d at 681. So, for example, expert witnesses have been permitted to testify to interpret

14

tire imprints and markings from an accident scene (*Morrison v. Reckamp*, 294 Ill. App. 3d 1015, 1020-21 (1998)) and to explain the formulae for determining speed and stopping distances under normal and variable braking conditions (*Fakhoury v. Vapor Corp.*, 154 Ill. App. 3d 531, 537 (1987)). Where, however, there were eyewitnesses who had a reasonable opportunity to view the accident and who had sufficient driving experience to offer opinions as to a vehicle's speed at the time of the accident, the trial court's decision to bar expert testimony on the issue of speed has been upheld, as automobile speed was a proper subject for lay opinion and was not beyond the understanding of the average juror. See, *e.g.*, *Watkins v. Schmitt*, 172 Ill. 2d 193, 206-07 (1996). The admissibility of expert testimony is a matter within the discretion of the trial court. *Fakhoury*, 154 Ill. App. 3d at 537. Each case is decided on its own facts. In each case, the trial court must center its attention on the need for the expert testimony and whether it will assist the jury in making factual determinations to resolve the dispute. *Watkins*, 172 Ill. 2d at 206; *Morrison*, 294 Ill. App. 3d at 1021-22.

¶ 25 Here, plaintiff's expert addressed matters of visibility and sight distances in darkened conditions based on data regarding high beam and low beam headlight illumination of the roadway and the geometry of the highway. Plaintiff's expert also addressed a motorist's reaction time, which included an analysis of a driver's time to perceive a hazard, consider his or her options, and then take the action. Cowsert's calculations were based upon his education, training, and experience, his assessment and analysis of the physical evidence, the plaintiff's injuries, and a consideration of the statements and testimony of the defendant. His opinions were derived from the multitude

15

of factors he considered, and involved an analysis of human factors,[1] road and lighting conditions, and physical evidence found at the scene of the collision. Under these circumstances, Cowsert's opinions were comprised of much more than simple mathematical equations, and his testimony could assist the factfinder in determining whether defendant was exercising due care in keeping a proper lookout to avoid colliding with a pedestrian on the roadway. Thus, we find that the trial court abused its discretion in refusing to consider the opinions of plaintiff's reconstruction expert as to defendant's negligence.

¶ 26    We next consider plaintiff's contention that summary judgment was improperly granted. Plaintiff's claims of negligence are based on her theory that defendant breached her duties to keep a proper lookout and to avoid a collision with a pedestrian. Defendant argued that summary judgment was proper as the undisputed evidence demonstrated that Matthew "darted out" in front of defendant's vehicle, and plaintiff offered no credible evidence of defendant's negligence.

¶ 27    Illinois courts recognize that the mere fact that a vehicle strikes a pedestrian does not give rise to a presumption of negligence on the part of the driver. *Miklos v. Caliendo*, 161 Ill. App. 3d 132, 138 (1987). That said, a driver's duty is not necessarily discharged by his uncontradicted testimony that he looked but did not see. *Wallace*, 87 Ill. App. 3d at 874. Illinois case law has established that a motorist "cannot look with unseeing eyes." *Hicks v. Donoho*, 79 Ill. App. 3d 541, 544 (1979) ("one will be deemed to have observed

---

[1]Our Supreme Court has recognized that "human factors engineering" is the study of the relationship of man to machinery. See *Zavala v. Powermatic, Inc.*, 167 Ill. 2d 542, 546 (1995).

that which would necessarily have been seen if he had looked, and will not be absolved of the charge of negligence in failing to look by testimony that he looked and did not see" (internal quotation marks omitted)).

¶ 28    In this case, defendant testified that her eyes were trained on the road and she did not see Matthew at any point prior to her vehicle striking him. While defendant is the only surviving eyewitness to the occurrence, there is other evidence in the record which demonstrates the existence of genuine issues of material fact regarding defendant's negligence.

¶ 29    Trooper Jourdan's Reconstruction Report indicates that on the night of the incident, the weather was clear, and it was dark. The section of the highway in the area where the collision occurred was dry, straight, and level. There was no construction on the roadway and there were no obstacles to motorists. Matthew was wearing a light-colored shirt and contrasting clothing. Based upon the location of the physical debris from defendant's vehicle, it appears that Matthew was hit near the fog line along the south shoulder of eastbound U.S. Route 50. According to plaintiff's expert, defendant's headlights, even on low beam, would have illuminated the roadway between 200 and 250 feet in front of her vehicle. Thus, there are factual questions regarding whether defendant could have, or should have, seen Matthew, and taken evasive action, if she had been exercising due care to keep a proper lookout.

¶ 30    The Reconstruction Report and the Crash Report raise additional questions of material fact regarding what occurred in the moments leading up to and following the collision. The first page of the Crash Report indicates that the collision occurred at 7:23

17

p.m., and the narrative section indicates that it occurred at 7:26 p.m. The Crash Report further indicates that defendant called and spoke with her daughter at 7:21 p.m. The information in this report raises a question of whether defendant may have been talking on the phone, and thereby distracted, prior to and at the time of the collision. The report also indicates that the emergency responders were notified at 7:30 p.m. Given the timeline, there is a question regarding how much time elapsed between the collision and defendant's call to 911. In addition, defendant told investigating officers that she was traveling at 60 miles per hour. In her deposition, she testified that she was driving between 55 and 60 miles per hour. Thus, there is some evidence that defendant was traveling in excess of the posted speed limit of 55 miles per hour. Based on the Reconstruction Report, it appears that defendant stopped her vehicle more than 390 feet east of the broken headlight debris, and there was no evidence of skid marks or any braking noted in the area of the debris. Given this information, there are factual questions as to whether defendant may have been speeding, whether she may have been engaged in distracted driving prior to the collision, and whether defendant's actions were a proximate cause of the collision with Matthew.

¶ 31    Additionally, there are potential discrepancies between defendant's deposition testimony and statements attributed to defendant in the Reconstruction Report. In a statement to the investigating officers, defendant reported that a moment after feeling an impact, she saw a boy with light hair and a light-colored t-shirt in the air in front of her car. In addition, defendant testified that when she called 911, she reported that she hit a boy. The record does not contain a recording or transcript of the 911 call. In defendant's discovery deposition, defendant testified that that she did not see the boy before she struck

him with her vehicle, and that she did not check on him after the accident. She testified that she first realized that she hit a person when, in a moment after the impact, she had a vision of a boy being lifted to the heavens. There is no indication that defendant told the investigating officers or the 911 dispatcher that her description of the occurrence was based on a vision. Given this evidence, a factfinder will have to determine the credibility of defendant's statements, and whether the account defendant gave to the officers on the night of the incident was more accurate and reliable than defendant's deposition testimony.[2]

¶ 32 After reviewing the pleadings, defendant's deposition, the affidavit of plaintiff's reconstruction expert, and other exhibits, and construing them strictly against the movant and liberally in favor of the opponent, we conclude that there are genuine issues of material fact as to defendant's negligence, and that the trial court erred in entering a summary judgment for defendant. The trial court also erred in refusing to consider the opinions of plaintiff's reconstruction expert in determining whether defendant was entitled to a judgment as a matter of law. Accordingly, we reverse the circuit court's decision to grant summary judgment and remand this case for further proceedings. In remanding this case, we want to make clear that we have taken no position on plaintiff's ability to prevail. We merely find that there are too many questions of material fact, yet to be addressed, to entitle defendant to a judgment as a matter of law.

---

[2]Whether any of defendant's testimony regarding these issues will ultimately be admissible may further depend on the applicability of the Dead-Man's Act or whether the protections of the Act have been waived under the circumstances presented here. See 735 ILCS 5/8-201 (West 2016).

¶ 33    For the reasons stated herein, the circuit court's decision to grant summary judgment for the defendant is reversed, and the cause is remanded for further proceedings.

¶ 34    Reversed and remanded.