# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

***State Farm Mutual Automobile Insurance Co. v. Plough***, 2017 IL App (2d) 160307

</div>

| | |
|---|---|
| Appellate Court Caption | STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, as Subrogee of Annie Rodriguez, Plaintiff-Appellee, v. WILLIAM PLOUGH, By and Through His Special Representative, Ryan Blues, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-16-0307 |
| Filed | June 29, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 14-SR-1464; the Hon. Michael A. Wolfe, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Elizabeth Abraham and Samiha H. Yousuf, of Madison Law Associates, LLC, of Chicago, for appellant.<br><br>John M. Mulherin and Daniel T. Rupkey, of Mulherin, Rehfeldt & Varchetto, P.C., of Wheaton, for appellee. |
| Panel | JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.<br>Justices Burke and Spence concurred in the judgment and opinion. |

¶ 1      This appeal follows a small-claims subrogation trial and raises questions about the application of the Dead-Man's Act (or Act) (735 ILCS 5/8-201 (West 2014)). We affirm the judgment of the trial court.

¶ 2      On November 25, 2013, Annie Rodriguez was involved in a traffic accident in Lombard, Illinois. Rodriguez was driving her SUV and was stopped at a red light at a major intersection. Her vehicle was then struck by an SUV driven by defendant, William Plough. According to Rodriguez, Plough's vehicle approached the intersection "pretty fast," failed to stop at the light, swerved to avoid another vehicle in the intersection, crossed into the opposing lanes, and struck Rodriguez's SUV head on. Lombard police officer Scott Frieling responded to the scene and interviewed Plough. According to Frieling, Plough admitted that the light changed to red as he approached the intersection; he "tried to stop, lost control of [his] vehicle and hit [Rodriguez]." Rodriguez was taken to the hospital with minor injuries and her SUV was towed to a body shop.

¶ 3      Rodriguez had a vehicle insurance policy from plaintiff, State Farm Mutual Automobile Insurance Company (State Farm). After the accident, Rodriguez paid the $250 deductible under her policy directly to the body shop, and State Farm paid the body shop the remaining cost of $3623 to repair Rodriguez's SUV. (For convenience, we have rounded to the nearest dollar.) State Farm also paid $4902 to Rodriguez's treatment providers for her various medical expenses. Afterward, State Farm sued Plough in subrogation for negligence in the amount of $8775—*i.e.*, the $8525 it had paid out per Rodriguez's policy plus her $250 deductible. Ultimately, a jury found in State Farm's favor, awarding it the $8525, but not the $250 for Rodriguez's deductible.

¶ 4      Plough appeals (through his special representative as we explain below, but we need not distinguish between them for now). He does not dispute the facts supporting the jury's verdict. Instead, he challenges some of the pretrial steps that led to that verdict as well as the admission of witness testimony at trial. Plough's challenges to the pretrial process, however, have been forfeited. Two of Plough's contentions—that the trial court should not have permitted State Farm to reject an arbitration award in Plough's favor and that the trial court should have granted Plough's motion to dismiss State Farm's complaint—were not included in Plough's posttrial motion. As noted, this case was tried before a jury and, with exceptions not relevant here (see *Arient v. Shaik*, 2015 IL App (1st) 133969, ¶ 29), "a party in a jury case may not argue to the appellate court 'any point, ground, or relief not specified' in his or her posttrial motion" (*id.* ¶ 32 (quoting Ill. S. Ct. R. 366(b)(2)(iii) (eff. Feb. 1, 1994)); see also *Landers v. School District No. 203*, 66 Ill. App. 3d 78, 80 (1978) (stating that a party is "precluded from raising the issue of the sufficiency of the complaint in this appeal since it failed to raise that matter in its post-trial motion" following a jury trial)). Since Plough failed to give the trial court an opportunity to reconsider its decisions concerning the arbitration award and State Farm's complaint, both of those issues have been forfeited.

¶ 5      We turn then to the only issue that was preserved in Plough's posttrial motion, the trial court's application of the Dead-Man's Act. The Act, rooted in English common law, has been an evidentiary rule in Illinois in one form or another since 1867. See *Gunn v. Sobucki*, 216 Ill. 2d 602, 611-12 (2005) (plurality opinion) (citing *Alexander v. Hoffman*, 70 Ill. 114, 117-18 (1873)). The Act provides in pertinent part as follows:

"In the trial of any action in which any party sues or defends as the representative of a deceased person or person under a legal disability, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability." 735 ILCS 5/8-201 (West 2014).

The purpose of the Act is to bar only that evidence which the decedent or the disabled could have refuted, which thereby equalizes the position of the parties in regard to the giving of testimony. *Gunn*, 216 Ill. 2d at 609; *Rerack v. Lally*, 241 Ill. App. 3d 692, 695 (1992).

¶ 6        Plough was never deposed and 18 months after the accident he became ill and was confined to a mental-health institution. Following an *in camera* hearing, the trial court found that Plough was legally disabled and it granted Plough's special representative leave to proceed with the case in Plough's stead. See 5 ILCS 70/1.06 (West 2014); 735 ILCS 5/2-1008(c) (West 2014). Plough's representative then filed a motion *in limine* under the Dead-Man's Act to declare Rodriguez incompetent to testify about the accident and to declare Frieling incompetent to testify about Plough's statements after the accident. The motion contended that the only person who could refute Rodriguez's and Frieling's testimony was Plough himself, who was now "under legal disability" for purposes of the Dead-Man's Act. The trial court denied the representative's motion *in limine*. At trial, Rodriguez, Frieling, and State Farm's claims adjuster all testified. During Rodriguez's testimony, Plough's representative objected, citing the Dead-Man's Act. However, no objection was made during Frieling's testimony or during the testimony of State Farm's claims adjuster. On appeal, Plough's representative contends that the trial court erred when it admitted the testimony of Rodriguez, Frieling, and the adjuster, which violated the Dead-Man's Act. We review the trial court's admission of testimony for an abuse of discretion, and we review the construction of the Dead-Man's Act *de novo*. *Gunn*, 216 Ill. 2d at 609.

¶ 7        Although Illinois is in the minority of jurisdictions that follow a "dead man's rule" of evidence (see Ed Wallis, *An Outdated Form of Evidentiary Law: A Survey of Dead Man's Statutes and a Proposal for Change*, 53 Clev. St. L. Rev. 75 (2005)), it has been argued that the Act serves important interests. See Robert S. Hunter, *The Dead Man's Act Must Be Retained*, 55 Ill. B.J. 512 (1967). In practice, however, the Act has a fairly narrow scope. Again, disqualification under the Act is limited to testimony by (1) an "adverse party or person directly interested in the action" testifying "on his or her own behalf" concerning (2) a "conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability." 735 ILCS 5/8-201 (West 2014). As this court and others have explained, a person is interested under the Act "if he or she will directly experience a monetary gain or loss as an immediate result of the judgment." *People v. $5,608 United States Currency*, 359 Ill. App. 3d 891, 895 (2005); see also *Michalski v. Chicago Title & Trust Co.*, 50 Ill. App. 3d 335, 339 (1977) (same).

¶ 8        Initially, by failing to object during Frieling's or the adjuster's testimony at trial on the basis of the Dead-Man's Act, Plough's representative has forfeited our review of the propriety of their testimony. See *McMath v. Katholi*, 191 Ill. 2d 251, 256 (2000). In any event, it is undisputed that neither Frieling nor the adjuster was a party to the action. See *$5,608 United States Currency*, 359 Ill. App. 3d at 896. Moreover, we note that neither Frieling nor the adjuster was qualified as a "directly interested" witness, so their testimony would not have

been barred under the Act. See, *e.g.*, *Clifford v. Schaefer*, 105 Ill. App. 2d 233, 246 (1969) (police officer not incompetent to testify in action between drivers); *Gieseke v. Hardware Dealers Mutual Fire Insurance Co.*, 61 Ill. App. 2d 119, 124-25 (1965) (insurance agent not incompetent to testify in action against insurance company). That leaves only Plough's representative's challenge to Rodriguez.

¶ 9    Even though this was a subrogation case, all sides concede that Rodriguez was not, strictly speaking, a party to the action. However, Plough's representative argues that Rodriguez *was* directly interested in the outcome of this case and was thereby rendered incompetent to testify about the accident under the Act. We agree.

¶ 10    At trial, Rodriguez testified about the accident and, in the context of auto accidents, it is generally understood that the "event which took place in the presence of the deceased or person under legal disability" was the collision itself. See *Balma v. Henry*, 404 Ill. App. 3d 233, 241 (2010); *Rerack*, 241 Ill. App. 3d at 695; see also Patrick Boland, *The Dead Man's Act: What Is an Event?*, DCBA Brief, April 2017, at 8; Michael H. Graham, Graham's Handbook of Illinois Evidence § 601.13 (10th ed. 2010). Both parties agree that the accident is the only "event" at issue.

¶ 11    State Farm maintains that Rodriguez was not "directly interested" in the outcome of its subrogation suit against Plough. State Farm relies primarily on the fact that this was a subrogation suit, and that, in order to sue Plough, State Farm had to first indemnify (or compensate) Rodriguez to the extent of her insurance claim. See generally *Capitol Indemnity Corp. v. Strike Zone S.S.B.&B. Corp.*, 269 Ill. App. 3d 594, 595-96 (1995) (discussing principles of subrogation). But merely labeling the underlying litigation as a "subrogation case" does not mean that Rodriguez had *no* financial interest in the outcome of the trial.

¶ 12    State Farm overlooks the fact that it did not sue just for the $8525 it paid in connection with Rodriguez's claim; it sued for the amount of Rodriguez's entire loss, including the $8525 State Farm paid *plus* her $250 deductible. In fact, as Plough's representative noted in the trial court, the Illinois Insurance Code—specifically, section 143b (215 ILCS 5/143b (West 2012))—dictated that State Farm was *obliged* to sue to recover Rodriguez's deductible if it sued Plough at all. Moreover, the fact that the jury failed to award State Farm the recovery of Rodriguez's deductible is immaterial. Section 143b provides:

> "Any insurance carrier whose payment to its insured is reduced by a deductible amount under a policy providing collision coverage is subrogated to its insured's entire collision loss claim including the deductible amount unless the deductible amount has been otherwise recovered by the insured \*\*\*. If the deductible amount is included in the subrogated loss claim the insurance carrier shall pay the full pro rata deductible share to its insured out of the net recovery on the subrogated claim." *Id.*

In other words, because State Farm recovered approximately 97% of what it sought—$8525 on its $8775 claim—Rodriguez *will* receive $243 as an immediate result of the judgment.

¶ 13    In fairness to the trial court, in court, Plough's representative noted only "the Illinois Insurance Code" and failed to cite the specific section. But the fact remains that, when Rodriguez testified, she stood to receive a monetary gain as an immediate result of any judgment in State Farm's favor. As such, given Rodriguez's interest in the outcome of the litigation, she should not have been permitted to testify about the collision itself.

¶ 14 Against this conclusion, State Farm makes a number of arguments, none of which is convincing. First, State Farm asserts that the trial court appointed to Plough a "special representative" as opposed to a " 'representative' under the definition of the Dead Man's Act." The argument implies that a separate probate proceeding to establish a guardianship over Plough was required before Plough (or his representative) could invoke the protections of the Dead-Man's Act. The Act itself contains no such requirement, and it has long been held that a separate probate proceeding is not required. See *Head v. Wood*, 20 Ill. App. 2d 97, 107-10 (1959). State Farm also argues that Plough's representative "opened the door" by cross-examining Rodriguez concerning the accident; however, Rodriguez's cross-examination testimony was considerably narrower than the extensive and detailed testimony she had already given on direct examination. In short, the door was not opened by the defense, and the Act was not forfeited.

¶ 15 That said, although it was error for Rodriguez to testify about the collision itself, the error does not warrant reversal of the jury's verdict. Rodriguez's testimony that Plough caused the accident was merely cumulative of Frieling's testimony that Plough admitted fault at the scene. See, *e.g.*, *Steele v. Provena Hospitals*, 2013 IL App (3d) 110374, ¶ 107 (recognizing that improperly admitted testimony is harmless where it is duplicative of properly admitted testimony). Again, Frieling had no interest in the outcome of the litigation, and Plough's "statement was an admission against interest made by [a party] and was properly admitted into evidence." *Clifford*, 105 Ill. App. 2d at 246. Since the error in this case was harmless, we affirm the judgment of the circuit court of Du Page County.

¶ 16 Affirmed.