NOTICE

Decision filed 12/16/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190338

NO. 5-19-0338

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| LARRY L. HOOD, not Individually, but as Executor of the Estate of Carl Maxey Hood, Deceased, | ) ) ) | Appeal from the Circuit Court of Hamilton County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 09-L-4 |
| GEORGE LEIGHTY, not Individually, but as Executor of the Estate of Edward T. Hampton, Deceased, | ) ) ) | Honorable |
| Defendant-Appellee. | ) ) | Thomas J. Dinn III, Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Justices Barberis and Wharton concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Larry L. Hood, as Executor of the Estate of Carl Maxey Hood, filed a negligence action against defendant, George Leighty, as Executor of the Estate of Edward T. Hampton, seeking damages resulting from a motor vehicle accident. The circuit court granted defendant's motion for summary judgment and denied plaintiff's motion for summary judgment as to liability. Plaintiff appealed. For reasons that follow, we reverse the order granting summary judgment for defendant, affirm the denial of plaintiff's motion for summary judgment as to liability, and remand for further proceedings.

1

¶ 2                                I. BACKGROUND

¶ 3     On June 4, 2009, plaintiff filed a complaint in the circuit court of Hamilton County and alleged that plaintiff's decedent, Carl Maxey Hood (Hood), suffered personal injuries as a result of the negligent operation of a motor vehicle by defendant's decedent, Edward T. Hampton.[1] Specifically, plaintiff alleged that on March 31, 2008, Hood was driving west on Illinois Route 14 (Route 14) in Hamilton County, Illinois, when his pickup truck was rear-ended by a passenger vehicle driven by Hampton. Plaintiff further alleged that upon impact, Hood's truck was propelled off the roadway, rolled over, and came to rest in a ditch. Plaintiff claimed that Hampton committed one or more of the following negligent acts or omissions:

"a) failed to keep a proper lookout; b) failed to look and see things that were obviously visible; c) failed to keep his vehicle under control so as to avoid a collision; d) failed to use every precaution to avoid a collision; e) failed to operate his vehicle within the speed limit, or at a speed reasonable and proper given the conditions so as not to endanger the safety of persons or property, in violation of 625 ILCS 5/11-601; and f) failed to decrease his speed to avoid a collision in violation of 625 ILCS 5/11-601."

¶ 4     Defendant filed an answer and affirmative defenses. In his answer, defendant admitted that the collision occurred but denied that Hampton was negligent and that any act or omission by Hampton was a proximate cause of Hood's injuries. Defendant further denied that Hood was injured to the extent claimed. As to affirmative defenses, defendant alleged, upon reasonable information and belief, that Hood was negligent and that Hood's negligence proximately caused or contributed to the occurrence and alleged damages. Specifically, defendant alleged that Hood

_____

[1]Carl Hood and Edward Hampton died prior to the filing of this action. There is no indication that either individual died from injuries sustained in the accident.

2

stopped, or suddenly decreased the speed of his vehicle, without first giving an appropriate signal, or that Hood failed to yield the right of way to Hampton's vehicle. Defendant further alleged that Hood's negligence was greater than any negligence by Hampton, thereby barring plaintiff's recovery, or, alternatively, that any recovery by plaintiff should be reduced in proportion to Hood's negligence. Defendant also moved to be excused from filing verified pleadings because both Hood and Hampton were deceased, and that motion was granted. Plaintiff filed a response denying each of defendant's affirmative defenses.

¶ 5 On September 19, 2011, defendant filed a motion for summary judgment. Defendant alleged that summary judgment was proper because plaintiff could not present admissible evidence to establish that Hampton was negligent or that his negligence was a proximate cause of Hood's injuries. Defendant noted that Hood and Hampton were deceased; that neither Hood, nor Hampton, gave testimony regarding the accident; and that there were no other eyewitnesses who could support the essential elements of plaintiff's negligence claim. Defendant argued that plaintiff could not rely upon the testimony of the law enforcement officers who responded to the scene of the collision because such testimony was admissible only if it was based upon personal knowledge and consisted of facts rather than conclusions. Defendant further argued that any other testimony regarding the events surrounding the accident would be inadmissible under the Dead-Man's Act (Act) (735 ILCS 5/8-201 (West 2010)). Defendant concluded that the circumstantial evidence offered by plaintiff was insufficient to prove, by a preponderance of the evidence, the elements of negligence and proximate cause. Defendant attached his answers to plaintiff's interrogatories in support of his motion.

¶ 6 On May 1, 2017, plaintiff filed "Plaintiff's Motion For Summary Judgment As To Liability And Response To Defendant's Motion For Summary Judgment." Plaintiff argued that he could

3

present admissible evidence to establish the essential elements of his cause of action. Plaintiff asserted that the law enforcement officers who responded to the accident scene could offer testimony regarding statements made by Hood and Hampton while at the scene of the accident, arguing that this testimony was not barred by the Act. Plaintiff further asserted that these experienced officers could testify to certain facts and conclusions based upon the statements made at the scene and could also testify to their personal observations of the physical evidence and location of the vehicles involved in the collision. Plaintiff further alleged that his expert witness could supplement the proof with admissible opinions regarding the cause of the accident. Plaintiff also pointed out that defendant offered no evidence to refute plaintiffs' evidence or to support defendant's affirmative defenses. Plaintiff claimed that the pleadings, depositions, admissions, and affidavits submitted demonstrated that there was no genuine issue as to any material fact and that plaintiff was entitled to summary judgment as a matter of law.

¶ 7    Plaintiff attached several documents in support of his motion. The documents included the discovery depositions of law enforcement officers Gregory Brenner, Jason Stewart, Paul Kimble, and Gregory Rapp; measurements and photographs of the roadway taken on August 27, 2012, by plaintiff Larry Hood; the affidavit of Larry Hood in his capacity as an expert; and the report and discovery deposition of plaintiff's accident reconstruction expert, Shawn Gyorke.

¶ 8    Brenner, the sheriff of Hamilton County, testified that he had been sheriff since his election in 2002. Prior to his election, he had been a deputy in Hamilton County for almost 20 years. Brenner recalled that, on March 31, 2008, the sheriff's department received two or three calls reporting two accidents, about a mile apart, on Route 14, east of McLeansboro. Brenner stated that accidents on the state highways are generally handled by the Illinois State Police, but because there were two accidents reported, he and Stewart responded.

4

¶ 9    When Brenner arrived at the scene, he observed that there was a single accident, involving two vehicles. Brenner described the first vehicle as "pretty well completely demolished." Brenner learned from medical personnel that the driver of that vehicle, Hampton, was okay, and that the driver of the other vehicle may have been injured. Brenner proceeded down the road and observed a truck in the ditch. He then saw Hood sitting on the ditch bank beside the truck. Brenner stated that he knew Hood indirectly because Hood and Brenner's uncle had been friends. Brenner was informed by an ambulance medic that Hood's blood pressure was very, very high and that he needed to go to the hospital. Brenner recalled that Hood was disoriented and did not want to get into the ambulance. Brenner testified that during his interaction with Hood, Hood stated that he "pulled out onto the highway" at Coal Mine Road and "got going down the road" when he got hit. Hood thought he had accelerated "to 30 or 40 miles an hour" before he was hit. Hood stated that there was a "big boom", and he was "flying through the air." Brenner did not speak with Hampton at the scene. Brenner stated that he knew Hampton but only by reputation. Brenner explained that occasionally, he or his officers found Hampton asleep in his vehicle, and Hampton's vehicle was not "too much out of the road."

¶ 10    Brenner testified that nearly a straight on impact sent Hood's vehicle off the road and that Hampton's vehicle continued down the road. Brenner observed debris in the area of the collision and a traffic sign down on the shoulder nearby. Brenner testified that there was a debris field going down the highway from the area of the impact to Hampton's vehicle. Brenner stated that based on the debris field, it looked like Hampton drove the vehicle until it fell apart. Brenner did not see any skid marks or brake marks indicating that Hampton's vehicle had locked up. Brenner observed that there was nothing left of the front end of Hampton's vehicle and that a wheel had been torn off. He described the collision as "a high speed from the rear impact from Hampton's car to the

5

pickup." Brenner acknowledged that he was not an accident reconstruction officer and that he did not prepare the Illinois Traffic Crash Report on this incident.

¶ 11    Stewart testified that he had worked as a deputy in the Hamilton County Sheriff's Department for seven years. Stewart recalled that he was not on duty on March 31, 2008, but was picking up his paycheck at the sheriff's department when a call came in around 11:20 a.m., reporting two accidents on Route 14, so he responded. When Stewart arrived, he was asked to check on Hampton. Stewart noticed that Hampton was having trouble catching his breath. Stewart asked, "What happened?" Hampton stated that he "just bought the car he was driving," that "a vehicle pulled out in front of him and he thought he hit the brake, but his vehicle didn't stop." Stewart stated that he could not remember for sure, but he thought Hampton stated that he hit the accelerator. Stewart testified that Hampton kept saying that he just got the car. Based upon these statements, Stewart inferred that the car was new and that Hampton was not familiar with it. When Stewart asked Hampton about the distance Hampton's vehicle traveled after impact, Hampton stated that "it took that distance to get the car stopped."

¶ 12    Kimble testified that he worked as a trooper for the Illinois State Police for 27 years. Kimble responded to the accident on March 31, 2008, and he prepared the "Illinois Traffic Crash Report" for that accident. Kimble acknowledged that he was not an accident reconstruction officer. When Kimble arrived on scene, he stopped near the first vehicle he came upon, which was Hampton's vehicle. Kimble testified that he talked with Hampton at some point, but he could not recall if the conversation occurred at the scene or at the hospital. Hampton stated that Hood's vehicle "pulled out of the Coal Mine Road and was going very slow" and that Hood's vehicle "pulled out in front of him and he had no time to stop or react." Kimble asked Hampton why his car was so far away from the point of impact. Hampton stated that "his brakes had failed." After

6

leaving the scene of the accident, Kimble went to the tow yard to check Hood's vehicle. Kimble observed that the brake line to the right front wheel had been severed and that the brake pedal went to the floor when the pedal was depressed.

¶ 13 Kimble testified that he spoke briefly with Hood after the Hampton vehicle had been towed. Kimble asked, "What happened?" Hood stated that he "pulled out of the Coal Mine Road," proceeding westbound, and he "got up to about 40, 45 miles an hour when he was hit from behind." Kimble testified that, after clearing the accident, he drove from the point where Hood indicated he entered the highway at Coal Mine Road and that he gradually accelerated and reached a speed of 40 miles per hour at the point of impact. Kimble stated that this was "just kind of verifying a speed that Mr. Hood said he was going."

¶ 14 Kimble testified that he did not request an accident reconstruction officer because the accident did not involve fatalities or serious injuries. In the traffic crash report, Kimble noted that the collision occurred at 11:20 a.m. and that the weather was clear and the road was dry. Kimble observed damage to the front of Hampton's vehicle and to the rear of Hood's vehicle. Kimble also observed gouge marks in the road where the impact occurred. He did not see skid marks leading up to the point of impact, and he saw nothing to indicate that Hampton had attempted to brake. Kimble noted that the point of impact was located 0.1 mile west of Coal Mine Road and that Hood's vehicle came to rest about 150 feet beyond the point of impact. Kimble stated, based upon his observations, that it looked like the front of Hampton's vehicle hit the rear of Hood's vehicle.

¶ 15 Kimble testified that he did not think Hood's vehicle was stopped at the time of impact. Kimble said that if Hood's vehicle was stopped, he would have expected to see more skid marks from that vehicle being pushed off the road, and he would not have expected that Hood's vehicle would have been pushed so far past the point of impact. Kimble concluded that Hampton was

7

driving above the speed limit when he hit the Hood vehicle. Kimble based his opinions on his experience in investigating traffic accidents, the damage to the vehicles, the statements of the drivers, the distance the Hood vehicle traveled after impact, and the marks and debris on the roadway. Kimble also testified that the Hampton vehicle was traveling about 30 to 40 miles an hour faster than the Hood vehicle at the time of impact. Kimble acknowledged that without the statements by the drivers, he would not have been able to determine why the accident occurred, other than that Hampton's vehicle ran into the back of Hood's vehicle. Kimble did not perform any accident reconstruction calculations, such as those based on vehicle weight and road friction. Kimble stated that Hampton's age and driving skills were the primary contributing factors to the accident and that the failure to reduce speed was the secondary contributing cause of the accident. Kimble issued a citation to Hampton for failing to reduce speed to avoid an accident, based upon Hood's statement and other evidence at the scene.

¶ 16    Rapp testified that he was employed as an Illinois State Trooper for 21 years. Rapp had basic accident reconstruction training in the academy but no formal training as an accident reconstruction officer. Rapp testified that on March 31, 2008, at 11:20 a.m., he responded to an accident on Route 14. When Rapp arrived, he spoke with Hood. Rapp recalled that Hood's blood pressure was very high. Rapp told Hood he needed to go to the hospital, and Hood did not want to go. Rapp observed that Hood's truck had rolled over and that the contents of the truck had been ejected from the vehicle. Rapp did not see skid marks at the point of impact, but he observed gouge marks resulting from the Hood vehicle rolling over. Rapp recalled that he assisted Kindle with the measurements and noted that Hampton's vehicle continued 0.7 mile past the point of impact, before it stopped on the shoulder.

¶ 17    Gyorke, plaintiff's accident reconstruction expert, prepared a report and gave a deposition. Gyorke testified that he completed his training at the Northwestern University Center for Public Safety (formerly the Northwestern Traffic Institute) and the Institute for Police Technology and Management. Gyorke reviewed the depositions of the officers, the drivers' statements, the traffic crash report, vehicle photographs from an insurance inspection, roadway photographs and measurements taken by Larry Hood on August 27, 2012, and photographs of two crash tests from the database of the National Highway Traffic Safety Administration (NHTSA). Based upon his analysis of the evidence and his training, education, and experience, Gyorke opined that the Hood vehicle had established itself in traffic for 15 to 18 seconds before being rear-ended, that the Hood vehicle was traveling at 40 to 50 miles an hour when it was rear-ended by the Hampton vehicle, that the Hampton vehicle was traveling at least 65 to 75 miles an hour at impact, and that Hampton had responded improperly by hitting the accelerator instead of the brake as he came upon the Hood vehicle.

¶ 18    Plaintiff also attached the affidavits of Brenner, Kimble, and Rapp in support of plaintiff's motion. In the affidavits, all three officers stated that they reviewed photographs of a Dodge Charger that was subjected to a 25-mile-per-hour collision in a controlled NHTSA crash test. Each officer averred that the damage sustained by Hampton's Dodge Charger was greater than the damage sustained by the similar model vehicles depicted in the NHTSA crash-test photographs.

¶ 19    On May 22, 2018, defendant filed a response to plaintiff's motion for summary judgment as to liability and a motion to strike affidavits. In the motion, defendant argued that the affidavits and deposition testimony of the police officers were based on speculation and conjecture, rather than personal observations of the accident or any scientific analysis. Defendant also argued that the officers' affidavits contained conclusions rather than facts that could be admitted into evidence,

as required by Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013), and therefore, the affidavits should be stricken. Defendant also claimed that plaintiff's expert offered only his estimates of the speed of the vehicles prior to impact.

¶ 20    On September 12, 2018, the court held a hearing on the parties' cross-motions for summary judgment and took the matter under advisement. There is no transcript or bystander's report of the hearing.

¶ 21    On October 12, 2018, plaintiff filed a motion seeking leave to supplement the record regarding the competing motions for summary judgment. Therein, plaintiff noted that defendant did not file any counteraffidavits or any evidence to support the defendant's affirmative defenses and that plaintiff had denied each affirmative defense. Plaintiff asserted that during the hearing on the competing motions for summary judgment, defendant took the position that even though he presented nothing to rebut the opinions of plaintiff's accident reconstruction expert and the responding police officers, a jury could nevertheless disbelieve that testimony and find for the defendant. In response, plaintiff argued that any speculation that a jury might not believe unrebutted testimony should not be considered sufficient to defeat a motion for summary judgment. A telephone conference was scheduled for November 14, 2018. According to plaintiff's brief, during the conference, the trial court granted plaintiff's motion to supplement, without objection.

¶ 22    On January 9, 2019, the trial court entered the following order, "The Court Having Considered The Pleadings, Arguments of Counsel And Submitted Case Law, Grants Defendant's Motion for Summary Judgment." The court directed the clerk to send a copy of the docket entry to the attorneys of record. There is no indication in the record that the court ruled on defendant's motion to strike the affidavits of the responding officers.

10

¶ 23    On February 7, 2019, plaintiff filed a motion for a ruling on his motion for summary judgment as to liability and a separate motion to reconsider and to vacate the order granting defendant's motion for summary judgment. On February 13, 2019, defendant filed a response to plaintiff's motions and asked the court to deny plaintiff's motion to reconsider and to deny plaintiff's motion for summary judgment.

¶ 24    On July 10, 2019, the court issued the following order:

"The court having considered the plaintiff's motion for reconsideration and to vacate judgment with attached case law and the defendant's response hereby denies the plaintiff's motion to reconsider. The court has also considered the plaintiff's motion for ruling upon plaintiff's motion for summary judgment as to liability and the defendant's response, [and] hereby denies the plaintiff's motion for summary judgment. Clerk to send copy of the court's ruling to attorneys."

¶ 25                                    II. ANALYSIS

¶ 26    On appeal, plaintiff claims that the trial court erred as a matter of law in granting defendant's motion for summary judgment and denying plaintiff's motion for summary judgment as to liability. Plaintiff argues that the pleadings, affidavits, and depositions on file demonstrate that there is no genuine issue as to any material fact and that plaintiff is entitled to summary judgment as to defendant's liability for the accident.[2]

---

[2]In the appellee's brief, defendant initially argued that two sections of plaintiff's brief, the "Nature of the Case" and the "Statement of Facts," contained arguments rather than facts and thereby violated Illinois Supreme Court Rule 341 (eff. May 25, 2018). Defendant asked this court to disregard any inappropriate or unsupported material or arguments. Subsequently, and without objection by defendant, plaintiff filed an amended appellant's brief to correct the deficiencies asserted by defendant. Nevertheless, we will not consider any inappropriate or unsupported material or argument contained in the briefs of either party.

¶ 27 Summary judgment is only appropriate where the pleadings, depositions, admissions, and affidavits demonstrate that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). In determining whether a genuine issue of material facts exists, the court construes the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opposing party. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004).

¶ 28 The purpose of summary judgment is not to try a question of fact, but to determine whether a genuine issue of material facts exists. *Id.* at 42-43. A court does not make credibility determinations or weigh evidence when ruling on a motion for summary judgment. *Merca v. Rhodes*, 2011 IL App (1st) 102234, ¶ 46. A triable issue exists where material facts are in dispute or where reasonable persons might draw different inferences from the undisputed material facts. *Adams*, 211 Ill. 2d at 43.

¶ 29 This case was decided in the context of cross-motions for summary judgment, at least at to the issue of liability. When parties file cross-motions for summary judgment, they agree that only a question of law is involved, and they invite the court to decide the issues based on the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. That said, the mere filing of cross-motions for summary judgment does not establish that there are no genuine issues of material fact nor does it obligate a court to render summary judgment. *Id.* An order granting summary judgment is reviewed *de novo*. *Id.* ¶ 30.

¶ 30 In this case, the parties generally agree that those operating motor vehicles on public highways have a duty of care. Defendant, however, has argued that he is entitled to summary judgment because of the absence of admissible evidence to show Hampton's breach of a duty of care and plaintiff's inability to prove causation. In response, plaintiff claims that he presented

12

sufficient evidence to establish Hampton's liability through the statements of Hampton and Hood, the testimony of the responding officers, and the opinions of plaintiff's expert witness. Plaintiff argues that the Act does not bar the responding officers from testifying about the statements made by Hampton and Hood at the scene of the accident. Plaintiff asserts that Hampton's statements are admissible as admissions by a party opponent and that Hood's statements are admissible as excited utterances. Plaintiff further argues that the officers may testify about their observations and investigation at the scene of the collision and that the opinions of plaintiff's expert were based upon principles of accident reconstruction and not on speculation and conclusions.

¶ 31   We begin with plaintiff's claim that the Act does not bar the responding officers from testifying about the respective statements made by Hampton and Hood at the scene of the accident. The Act (735 ILCS 5/8-201 (West 2018)) provides in pertinent part as follows:

"In the trial of any action in which any party sues or defends as the representative of a deceased person or person under a legal disability, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability, except in the following instances:

(a) If any person testifies on behalf of the representative to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability, any adverse party or interested person, if other competent, may testify concerning the same conversation or event.

13

(b) If the deposition of the deceased or person under a legal disability is admitted in evidence on behalf of the representative, any adverse party or interested person, if otherwise competent, may testify concerning the same matters admitted in evidence."

¶ 32 The Act is intended "to protect decedents' estates from fraudulent claims and to equalize the position of the parties in regard to the giving of testimony." *Gunn v. Sobucki*, 216 Ill. 2d 602, 609 (2005). The Act bars an adverse party, or a person directly interested in the action, from testifying about a conversation with the deceased or any event which took place in the presence of the deceased. 735 ILCS 5/8-201 (West 2018). A person is interested under the Act if that person will directly experience a monetary gain or loss as an immediate result of the judgment. *State Farm Mutual Automobile Insurance Co. v. Plough*, 2017 IL App (2d) 160307, ¶ 7. The Act does not bar testimony regarding facts that the decedent not could have refuted. *Gunn*, 216 Ill. 2d at 609; *Balma v. Henry*, 404 Ill. App. 3d 233, 240 (2010). The Act is applicable not only in trials but also in summary judgment proceedings because summary judgment is an adjudication of a claim on the merits and is the procedural equivalent of a trial. *Balma*, 404 Ill. App. 3d at 238.

¶ 33 In this case, the officers from the Hamilton County Sheriff's Department and the Illinois State Police are nonparty witnesses, and they have no direct interest in the litigation. Accordingly, the Act does not disqualify those officers from testifying about their conversations with Hampton and Hood, provided such statements are otherwise admissible. See *Plough*, 2017 IL App (2d) 160307, ¶ 8.

¶ 34 Therefore, we next consider plaintiff's contention that the statements made by Hampton at the scene of the accident are admissible as admissions by a party opponent. An admission by a party opponent is a recognized exception to the hearsay rule and is admissible as substantive

14

evidence. Ill. R. Evid. 801(d)(2) (eff. Oct. 15, 2015); *In re Estate of Rennick*, 181 Ill. 2d 395, 406 (1998). To fall within this exception, the statement must be offered against a party and it must be the party's own statement. Ill. R. Evid. 801(d)(2)(A) (eff. Oct. 15, 2015). An admission made by a party is admissible against that person's estate after his death. *Rennick*, 181 Ill. 2d at 405 (death does not erase an admission from a party's lips); *Balma*, 404 Ill. App. 3d at 238. In this case, Hampton's statements to Stewart and Kimble contain relevant admissions, and those admissions are not barred by the Act. See *Rennick*, 181 Ill. 2d at 405. These admissions may be considered as evidence for purposes of the summary judgments proceedings and at trial. *Id.* at 407.

¶ 35    Next, we consider whether Hood's statements are admissible under the "excited utterances" exception to the hearsay rule. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Ill. R. Evid. 803(2) (eff. Sept. 28, 2018). A statement is admissible under the excited utterance exception to the hearsay rule if (1) there was an occurrence sufficiently startling to produce a spontaneous and unreflecting statement, (2) there was an absence of time to fabricate, and (3) the statement related to the circumstances of the occurrence. *People v. Williams*, 193 Ill. 2d 306, 352 (2000); *People v. Poland*, 22 Ill. 2d 175, 180-81 (1961).

¶ 36    When analyzing whether a hearsay statement is admissible as an excited utterance, courts employ a totality of the circumstances analysis. *Williams*, 193 Ill. 2d at 352. The totality of the circumstances analysis involves consideration of several factors, including time, the mental and physical condition of the declarant, the nature of the event, and the presence or absence of self-interest. *Id.* The period of time that may pass without affecting the admissibility of a statement as an excited utterance varies greatly, and the critical inquiry with regard to time is whether the statement was made while the excitement of the event predominated. *People v. Sutton*, 233 Ill. 2d

15

89, 107-08 (2009). Further, the spontaneity of the statement is not necessarily destroyed by the fact that the declarant's statement was made in response to a question or after having spoken to another. See *Williams*, 193 Ill. 2d at 353; *J.L. Simmons Co. v. Firestone Tire & Rubber Co.*, 126 Ill. App. 3d 859, 865 (1984); *Thomas v. Goodman*, 52 Ill. App. 3d 774, 780-81 (1977).

¶ 37     After considering the totality of the circumstances surrounding Hood's statements at the scene of the collision, we find that Hood's statements qualify as excited utterances. First, the rear-end collision and subsequent rollover of Hood's vehicle was a sufficiently startling event. Next, Hood's statements were made shortly after the collision. Thus, there was no time for reflection or fabrication. Both Brenner and Kimble observed that Hood was excited and experiencing a very high blood pressure. Each individually asked the open-ended question, "What happened?" Hood gave a similar response to both officers. Hood's statements were made in response to general, nonleading questions. As such, the questions did not deprive the statements of their spontaneity. Finally, the statements were related to the circumstances of the accident. Thus, Hood's statements qualify as excited utterances, and such statements may be considered as substantive evidence for purposes of the summary judgments proceedings, and at trial.

¶ 38     Next, we consider defendant's contention that plaintiff cannot rely upon the testimony of the responding officers to support the elements of negligence and causation because none of the officers witnessed the accident and none were qualified as experts in accident reconstruction. Police officers are permitted to testify as to any physical evidence or conditions they personally observed at the scene of an accident. *Watkins v. Schmitt*, 172 Ill. 2d 193, 207-08 (1996); *Wade v. City of Chicago Heights*, 295 Ill. App. 3d 873, 883-84 (1998) (officer with 23 years' experience permitted to testify regarding point of impact based on physical evidence found at the scene).

16

¶ 39    Here, Kimble and Rapp each have more than 20 years of experience investigating motor vehicle accidents for the Illinois State Police, and Brenner has more than 20 years' experience in law enforcement. Kimble and the other officers described the location of the vehicles after the collision and the extent of the damage to each vehicle. They also described the location of the debris field, the presence of gouge marks in the roadway, and the lack of skid marks. Kimble took measurements based upon the physical evidence he observed at the scene. He determined that the point of impact was 0.1 miles west of the Coal Mine Road, that the Hood vehicle overturned and came to rest in a ditch approximately 150 feet west of the point of impact, and that the Hampton vehicle came to rest approximately 0.7 miles west of the point of impact. Testimony concerning the officers' observations and investigation of the physical evidence at the scene is admissible. See *Watkins*, 172 Ill. 2d at 207-08. This testimony, taken together with the admissions of Hampton, and the excited utterances of Hood, raises factual questions as to whether Hampton failed to keep a proper lookout and to take all necessary precautions to control his vehicle and avoid an accident. See *id.* at 208-09.

¶ 40    Finally, we consider defendant's contention that the testimony and opinions of plaintiff's accident reconstructions expert are based upon speculation, rather than scientific principles. Generally, the opinion testimony of an expert is admissible if the expert is qualified by knowledge, skill, experience, training, or education and the testimony would assist the jury in understanding the evidence. See *Zavala v. Powermatic, Inc.*, 167 Ill. 2d 542, 546 (1995); *Augenstein v. Pulley*, 191 Ill. App. 3d 664, 681 (1989). As with any type of expert testimony, reconstruction testimony is proper, even where there is an eyewitness, if what the expert offers is knowledge and the application of principles of science, including physics and engineering, beyond the ken of the average juror. *Zavala*, 167 Ill. 2d at 546.

¶ 41    Whether to admit expert reconstruction testimony depends upon the "usual concerns of whether expert opinion testimony is appropriate generally." *Id.* Thus, the admissibility of reconstruction evidence is determined by whether the expert is qualified in the field and whether the testimony will aid the factfinder in the resolution of the dispute. *Id.*; *Augenstein*, 191 Ill. App. 3d at 681. So, for example, expert witnesses have been permitted to testify to interpret tire imprints and markings from an accident scene (*Morrison v. Reckamp*, 294 Ill. App. 3d 1015, 1020-21 (1998)) and to explain the formulae for determining speed and stopping distances under normal and variable braking conditions (*Fakhoury v. Vapor Corp.*, 154 Ill. App. 3d 531, 537 (1987)). The admissibility of expert testimony is a matter within the discretion of the trial court. *Id.* Each case is decided on its own facts. In each case, the court must center its attention on the need for the expert testimony and whether it will assist the jury in making factual determinations to resolve the dispute. *Watkins*, 172 Ill. 2d at 206; *Morrison*, 294 Ill. App. 3d at 1020-21.

¶ 42    In this case, plaintiff's accident reconstruction expert, Gyorke, testified that he completed his training at the Northwestern University Center for Public Safety (formerly the Northwestern Traffic Institute) and the Institute for Police Technology and Management. Gyorke reviewed the depositions of the responding officers, the statements of the drivers, the "Illinois Traffic Crash Report," the photographs of the roadway and roadway measurements taken on August 27, 2012, and crash data from NHTSA. Gyorke indicated that he employed generally accepted principles of accident reconstruction, which included principles of physics and energy, human factors, and a crush analysis, in his analysis investigation of the physical evidence at the scene and the damage to the vehicles. In doing so, Gyorke arrived at certain conclusions based upon his scientific and otherwise specialized knowledge that would assist the trier of fact in determining the issues raised by the pleadings in this case. As such, Gyorke's testimony is admissible under Rule 702 of the

18

Illinois Rules of Evidence (Ill. R. Evid. 702 (eff. Jan. 1, 2011)), and his opinions should have been considered by the trial court in its evaluation of the competing motions for summary judgment. Further, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Ill. R. Evid. 704 (eff. Jan. 1, 2011). As such, plaintiff has demonstrated that there is an adequate factual basis in the record to support Gyorke's opinions. Any weaknesses in the basis and the general soundness of the opinions go to the weight of the testimony, and decisions regarding the weight of the testimony are for the trier of fact. *Snelson v. Kamm*, 204 Ill. 2d 1, 26-27 (2003). In the context of the cross-motions for summary judgment, plaintiff has demonstrated that Gyorke's testimony was based upon the application of principles of science and that his testimony could assist the factfinder in determining the issues of negligence and causation. At trial, the testimony of Gyorke is likewise admissible.

¶ 43                                    III. CONCLUSION

¶ 44     It bears repeating that the purpose of summary judgment is not to try a question of fact but to determine whether a genuine issue of material facts exists. *Adams*, 211 Ill. 2d at 42-43. A trial court may grant summary judgment on undisputed facts only if all the evidence, when viewed in the light most favorable to the nonmoving party, permits no inferences from which different conclusions may be drawn and with which no reasonable person could disagree. *Balma*, 404 Ill. App. 3d at 242. Where, however, disputes as to material facts exist or if reasonable minds may differ with respect to the inferences from the evidence, summary judgment must not be granted. *Id.*; *Rerack v. Lally*, 241 Ill. App. 3d 692, 696 (1992).

¶ 45     In sum, defendant did not carry his burden to establish the lack of evidence to support plaintiff's cause of action. After reviewing the pleadings, the depositions of the responding

19

officers, the admissions by Hampton, the excited utterances, and the expert testimony presented by plaintiff, we find that there are material issues of genuine fact in dispute and that reasonable minds may differ on the inferences from the evidence. Thus, the trial court erred in granting a summary judgment for defendant. In remanding this case, we note that there are additional evidentiary issues for the trial court's determination on a more fully developed record, including the admissibility of the affidavits of Larry Hood and the responding officers. Further, the credibility of the witnesses and the weight to be given to the evidence are matters to be decided by the finder of fact.

¶ 46    Accordingly, the order of the circuit court granting summary judgment in favor of the defendant is reversed, the order denying plaintiff's motion for summary judgment is affirmed, and the cause is remanded for further proceedings.

¶ 47    Affirmed in part and reversed in part; cause remanded.

**No. 5-19-0338**

| | |
|---|---|
| **Cite as:** | *Hood v. Leighty*, 2020 IL App (5th) 190338 |
| **Decision Under Review:** | Appeal from the Circuit Court of Hamilton County, No. 09-L-4; the Hon. Thomas J. Dinn III, Judge, presiding. |
| **Attorneys for Appellant:** | John B. Leonard, of Mt. Sterling, for appellant. |
| **Attorneys for Appellee:** | Joseph A. Bleyer and K. Rockne Bleyer, of Bleyer and Bleyer, of Marion, for appellee. |