2021 IL App (1st) 201055-U

FOURTH DIVISION
December 9, 2021

Nos. 1-20-1055 & 1-20-1061 (cons.)

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| ZAIDA HERNANDEZ and RHONDA LARKIN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County |
| | ) | |
| v. | ) | Nos. 14 CH 20212 |
| | ) | 14 CH 20213 |
| BOARD OF EDUCATION OF CITY OF CHICAGO, | ) | |
| | ) | Honorable |
| Defendant-Appellee. | ) | Anna M. Loftus, |
| | ) | Judge Presiding. |

_____

PRESIDING JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Reversing the circuit court's grant of summary judgment in favor of a school board where the validity of the board's termination of the employment contracts of two school principals was not clear and free from doubt.

¶ 2    Following the termination of their employment contracts, two former principals for the

Chicago Public Schools (CPS) – Zaida Hernandez (Hernandez) and Rhonda Larkin (Larkin) –

filed complaints in the circuit court of Cook County against the Board of Education of the City

of Chicago (Board).  The Board maintained that the terminations were proper where each

plaintiff went on a leave of absence that lasted longer than the period for which she had job

protection, *i.e.*, neither principal returned to work when her job-protected leave ended. The plaintiffs argued that their terminations were improper, as the Board had materially changed its leave of absence policy during the duration of their employment contracts. On the parties' cross-motions for summary judgment, the circuit court entered judgment in favor of the Board and dismissed each lawsuit with prejudice. The circuit court found that the plaintiffs' employment contracts automatically incorporated any Board rules and policies promulgated during the duration of the contracts and that the amended Board rule regarding leave was not a modification to the contracts. We consolidated the plaintiffs' appeals and, for the reasons discussed below, we reverse the judgments of the circuit court and remand these matters for further proceedings.

¶ 3                                    BACKGROUND

¶ 4                *The Board Rules and Policies and the Plaintiffs' Contracts*

¶ 5     The Board, which operates the CPS, periodically adopts and publishes rules and policies. In August 2005, the Board adopted a policy addressing supplemental family and medical leave, posted as section 513.3 of the CPS Policy Manual. The section provided, in part, that a principal who exhausted her unpaid leave under the Family and Medical Leave Act (FMLA) (29 U.S.C. § 2601 *et seq.*) – *i.e.*, generally 12 workweeks – and who remained unable to work due to personal illness was entitled to unpaid supplemental personal illness leave for a period not to exceed the duration of the principal's contract or 25 work months. Section 513.3 further provided that a principal's right to return to a position would terminate on the termination date of her contract in effect at the time she last actively worked.

¶ 6     In December 2010, Hernandez entered into a Uniform Principal's Performance Contract (employment contract) with the Board and the local school council at Joseph Jungman Elementary School. The term of her four-year employment contract was July 1, 2011 through

June 30, 2015. In June 2012, Larkin entered into an employment contract with the Board and the local school council at Alex Haley Elementary School for a four-year term from July 1, 2012 through June 30, 2016.

¶ 7    Pursuant to section V thereof, the employment contract could be terminated by the Board prior to the expiration of the contract term "for any one of the following reasons or by any one of the following methods." The seven enumerated reasons or methods included the removal of the principal "for cause pursuant to 105 ILCS 5/34-85" and the death, resignation, or retirement of the principal. Section XII(d) provided that the rules, policies, and procedures of the Board promulgated during the term of the employment contract were incorporated by reference, except to the extent that such rules, policies, or procedures were inconsistent with the terms and conditions of the employment contract, in which event the employment contract would control.

¶ 8    The Board adopted section 4-12(b) of the Board Rules on August 28, 2013. The section provided, in part: "Notwithstanding anything in these leave policies to the contrary, principals *** shall only have position protection during the first twelve (12) workweeks of FMLA leave and will not have position protection during any supplemental leave."

¶ 9                    *The Plaintiffs' Leaves of Absence and Terminations*

¶ 10    Larkin filed an FMLA application in December 2013, seeking a leave of absence due to health issues. She was granted a leave from January 6, 2014 through February 7, 2014, which was ultimately extended through April 25, 2014. Although her 12 weeks of FMLA job protection had ended on April 1, 2014, the Board subsequently accommodated her requests for additional leave with job protection through May 1, 2014.

¶ 11    Larkin was informed in writing that if she did not report for work on May 12, 2014, the Board would presume her intent to separate and would effectuate her resignation. Larkin did not

3

report to work on that date. In a letter dated May 16, 2014, the Board effectuated her resignation as of May 13, 2014, and terminated her employment contract pursuant to section V(d), which refers to her "death, resignation or retirement."

¶ 12    Hernandez similarly filed an FMLA application in early 2014, seeking a leave of absence due to health issues. Although she was granted multiple extensions of her leave through July 16, 2014, the Board informed her in writing that her job protection ended on May 1, 2014. In a letter dated May 23, 2014, the Board effectuated her resignation from her principalship effective May 19, 2014, and her employment contract was terminated pursuant to section V(d) based on her resignation.

¶ 13                    *The Circuit Court Litigation*

¶ 14    Represented by the same counsel, the plaintiffs filed separate but substantially similar complaints against the Board in the circuit court of Cook County. In their original complaints, they sought specific performance of their employment contracts (count I), declarations that would reinstate them as school principals (count II), and damages for breach of contract (count III). In their amended complaints, the plaintiffs added a claim for negligent infliction of emotional distress (count IV).

¶ 15    In both cases, the circuit court dismissed the declaratory judgment count and the negligent infliction of emotional distress count, which the plaintiffs failed to timely replead. The parties then filed cross-motions for summary judgment as to the remaining counts.

¶ 16    The circuit court held a consolidated hearing on summary judgment in the two cases. The plaintiffs argued that their employment contracts were materially changed based on the reduction of the job-protection period from 25 months to 12 weeks in 2013, *i.e.*, during the four-year terms of the contracts. The plaintiffs further contended there was neither consideration for

4

nor proper notice of the modification. The Board asserted that "the 2013 policy applied and the 2005 policy did not apply," and that the plaintiffs were repeatedly warned of the consequences of failing to timely return to work.

¶ 17    The circuit court ruled that specific performance was unavailable for a number of reasons, including a presumption against specific performance in the employment context and the expiration of the employment contracts by their own terms. As to the breach of contract count, the circuit court opined that consideration for the 2013 modification would have been required if it was a modification to the actual *employment contract*, but the modification was solely to the Board's rules or policies, which were expressly incorporated into the employment contracts. The circuit court thus granted summary judgment in favor of the Board on the two remaining counts and dismissed the cases with prejudice. Each plaintiff filed a motion to vacate the judgment, which the circuit court denied. The plaintiffs subsequently filed these timely appeals, which have been consolidated.

¶ 18                                  ANALYSIS

¶ 19    As an initial matter, we note that the plaintiffs filed a motion to supplement the record on appeal, seeking to include Larkin's deposition transcript pertaining to a federal lawsuit she filed against the Board, which is not directly related to the case at hand (*Larkin v. Board of Education of the City of Chicago*, No. 1:17-CV-09298). The Board objected, asserting that the federal court deposition transcript was not a part of the circuit court proceedings herein. In an order entered on July 28, 2021, the plaintiffs' motion was taken with the case. Based on our review of the record, it does not appear that the Larkin deposition transcript was a part of the circuit court filings. "A document not properly a part of the trial court proceedings is *dehors* the record and may not be considered by this court on review." *Knapp v. Bulun*, 392 Ill. App. 3d 1018, 1027-28

(2009). The plaintiffs' motion to supplement the record with the Larkin deposition is thus denied, and we will disregard any facts in the plaintiffs' briefs that were not advanced in the circuit court. See *Osten v. Northwestern Memorial Hospital*, 2018 IL App (1st) 172072, ¶ 3.

¶ 20    The Board also observes that the statement of facts in the plaintiffs' opening brief does not include citations to the record, in violation of the Illinois Supreme Court Rules. See Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020) (requiring the statement of facts to include "appropriate reference to the pages of the record on appeal"). "The Illinois Supreme Court Rules are not suggestions; they have the force of law and must be complied with." *Super Mix of Wisconsin, Inc. v. Natural Gas Pipeline Co. of America, LLC*, 2020 IL App (2d) 190034, ¶ 28. In the instant case, however, the improprieties of the plaintiffs' statement of facts do not hinder our review (*Hall v. Naper Gold Hospitality, LLC*, 2012 IL App (2d) 111151, ¶ 9), and we thus decline to disregard such statement of facts, as requested by the Board. See also *In re Marriage of Eberhardt*, 387 Ill. App. 3d 226, 228 (2008) (noting that "[i]t is within our discretion to consider an appeal despite minimal citation to the record in the appellant's statement of facts").

¶ 21    Although the amended complaints included four counts – specific performance (count I), declaratory judgment (count II), breach of contract (count III), and negligent infliction of emotional distress (count IV) – the sole count at issue on appeal is the breach of contract count. In orders which were entered on November 13, 2015, the circuit court granted the Board's motions to dismiss the declaratory judgment and negligent infliction of emotional distress counts. Neither plaintiff timely repleaded those counts within the 28-day period set forth in the November 13, 2015 order. See *Ward v. Decatur Memorial Hospital*, 2018 IL App (4th) 170573, ¶ 50, *aff'd*, 2019 IL 123937 (stating that "if the court gives permission to replead, the plaintiff not only *may* but, on pain of waiver or forfeiture, *must* replead or otherwise incorporate the

dismissed counts in the amended complaint" (emphases in original)). As to the specific performance count, such relief is unavailable as the employment contracts already expired by their own terms (in 2015 for Hernandez and 2016 for Larkin). We further note that the plaintiffs do not advance any arguments on appeal as to the specific performance count. "Points that an appellant fails to raise in her opening brief are forfeited." *Gillard v. Northwestern Memorial Hospital*, 2019 IL App (1st) 182348, ¶ 51, citing Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).

¶ 22     The question on appeal is thus whether the circuit court erred in granting summary judgment in favor of the Board as to the breach of contract counts. In an appeal of an order granting summary judgment, a reviewing court must determine whether "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). The purpose of summary judgment is not to try an issue of fact but to determine whether one exists. *Monson v. City of Danville*, 2018 IL 122486, ¶ 12. Accord *Hood v. Leighty*, 2020 IL App (5th) 190338, ¶ 28. "Although summary judgment is encouraged in order to aid the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation." *Monson*, 2018 IL 122486, ¶ 12. Consequently, a court must construe the evidence in the record strictly against the moving party and should grant summary judgment only if the moving party's right to a judgment is clear and free from doubt. *Id.* "On appeal from an order granting summary judgment, a reviewing court must consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether summary judgment is proper as a matter of law." *Id.*

¶ 23     The parties in the instant appeals filed cross-motions for summary judgment. "When parties file cross-motions for summary judgment, they agree that only a question of law is

involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. The mere filing of such cross-motions, however, neither establishes that there is no issue of material fact, nor does it obligate a court to render summary judgment. *Id.*

¶ 24    An order granting summary judgment is reviewed *de novo*. *Id.* ¶ 30. We also review *de novo* issues involving contract construction and statutory interpretation. *Valerio v. Moore Landscapes, LLC*, 2021 IL 126139, ¶ 20. *De novo* review means that we perform the same analysis that a trial judge would perform. *Merca v. Rhodes*, 2011 IL App (1st) 102234, ¶ 40. "As such, we will 'examine the evidence unconstrained by the reasoning of the trial court.' " *Id.*, quoting *John E. Reid & Associates, Inc. v. Wicklander-Zulawski & Associates*, 255 Ill. App. 3d 533, 538 (1993).

¶ 25    The plaintiffs advance three primary arguments on appeal. First, they contend that the circuit court erroneously failed to consider whether the implied duty of good faith constrained the Board's modifications of their job protection. Second, the plaintiffs assert that the Board did not adequately notify them of its intent to unilaterally modify the terms and conditions of their employment contracts after execution. Third, the plaintiffs argue that the Board's unilateral change of the terms and conditions of their employment undermined the intent of the contracting parties. The Board challenges these contentions, arguing, in part, that (a) the plaintiffs could not recover contract damages as they were in material breach of their contracts, (b) the circuit court did not hold that the Board could unilaterally change the terms of the contract, as the contracts were silent as to leaves of absence, (c) the plaintiffs forfeited any claim of error based on the implied duty of good faith, and (d) the Board did not violate any notice obligation.

¶ 26    As noted above, the mere filing of cross-motions for summary judgment does not establish that there is no genuine issue of material fact. *Pielet*, 2012 IL 112064, ¶ 28. Based on

our review of the submissions of the parties, we cannot conclude that the Board's right to a judgment is clear and free from doubt. See *Monson*, 2018 IL 122486, ¶ 12.

¶ 27    The 2005 policy permitted a supplemental personal illness leave lasting either the duration of the principal's contract or 25 work months. Under the 2005 policy, a principal taking such supplemental personal illness leave had a right to return to her position through the end of her contract term. During oral argument on the summary judgment motions in the circuit court, the Board's attorney argued: "[B]oth of the plaintiffs were told that they were exceeding the job protected leave. There's no reason for them to rely on the 2005 policy as they did." The Board asserted that the 2013 rule – which effectively reduced the applicable timeframe from 25 months to 12 weeks – was available to the plaintiffs and was incorporated into their employment contracts through section XII(d) thereof.

¶ 28    A review of the relevant correspondence, however, suggests that the Board's communications with the plaintiffs were less than clear. Both plaintiffs received correspondence entitled "FMLA Leave of Absence Approval," which provided, in part: "Under the [FMLA], if you return to work during the first twelve weeks of your leave you are entitled to return to your current position or a substantially equivalent position. You may be entitled to additional leave and additional job protection depending on your position pursuant to the Board's Supplemental and [*sic*] Family and Medical Leave Policy, Section 513.3." If the plaintiffs, however, had reviewed section 513.3 of the CPS Policy Manual, they would have found no express reference to the reduction of the position-protected leave for principals to 12 weeks. Such modification was effectuated through the adoption of section 4-12(b) of the Board Rules on August 28, 2013. The Board's correspondence directed the plaintiffs to a *policy* provision which potentially provided for significantly greater position-protected leave than the Board provided for in its *rules*

at that time.

¶ 29    We further observe that Hernandez was granted an extension of her leave of absence through July 16, 2014, yet her contract was terminated pursuant to a letter dated May 23, 2014. The letter indicated that the "job protection attached to [her] position as principal ended on May 1, 2014." As to Larkin, she inquired in an email dated May 5, 2014: "If I no longer have job protection, will I be given a similar assignment or will I be fired from CPS[?]" While the relevant Board policy and rules discuss "position protection" – and the Board's correspondence referenced "job protection" – the exact meaning of these terms is not evident from the record. During oral argument before this Court, the Board's counsel indicated that he thought the parties used these two terms interchangeably and that he was unaware of a reason "why one term was used versus the other." The Board's counsel also represented that there is no definition of "job protection" in the record. The imprecision of these key terms potentially resulted in understandable confusion for the plaintiffs herein.

¶ 30    The employment contracts of both plaintiffs were then terminated pursuant to section V(d) of the contracts based on the Board "effectuat[ing]" their resignations. Section V(d) provides that the death, resignation, or retirement of the principal is a basis for termination. To "resign" is to "formally announce one's decision to leave a job or an organization." *Black's Law Dictionary* (11th ed. 2019). In the instant case, however, both plaintiffs apparently wished to remain in their respective positions; neither Hernandez nor Larkin voluntarily relinquished or surrendered her principalship. Not only is the concept of constructive resignation absent from the plaintiffs' employment agreements, but it may contradict the parties' intent to expressly specify the particular reasons and methods for termination. See also 105 ILCS 5/34-8.1 (West 2014) (providing that "[d]uring the term of his or her performance contract, a principal may be

10

removed only as provided for in the performance contract except for cause"). To the extent that section 4-12(b) of the Board Rules – or the Board's interpretation of such section – provides for the possibility of constructive resignation, then it arguably conflicts with the express reasons and methods for termination set forth in the plaintiffs' employment contracts. Pursuant to section XII(d) of the employment contracts, if a rule, policy, or procedure of the Board promulgated during the term of the employment contract was inconsistent with the terms and conditions of the contract, then the contract would control.

¶ 31    As noted above, we must consider whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether summary judgment is proper as a matter of law. *Monson*, 2018 IL 122486, ¶ 12. For the reasons discussed herein, we cannot conclude that the Board's right to judgment was clear and free from doubt. We therefore reverse the judgments of the circuit court granting summary judgment to the Board and dismissing the lawsuits with prejudice.

¶ 32                                  CONCLUSION

¶ 33    The judgments of the circuit court of Cook County are reversed, and these matters are remanded for additional proceedings consistent with this order.

¶ 34    Reversed; remanded.